548 So.2d 209 (1989)
Howard M. ZEIDWIG, etc., et al., Petitioners,
v.
Joseph WARD, Respondent.
No. 72316.
Supreme Court of Florida.
July 27, 1989.
Rehearing Denied September 29, 1989.
Melanie G. May of Bunnell and Woulfe, P.A., Fort Lauderdale, for petitioners.
Russell S. Bohn of Edna L. Caruso, P.A. and Montgomery, Searcy & Denney, P.A., West Palm Beach, for respondent.
OVERTON, Justice.
We have for review Ward v. Zeidwig, 521 So.2d 215 (Fla. 4th DCA 1988), in which the district court held that a claim of legal malpractice against a lawyer for ineffective assistance of counsel in a criminal case is not barred by the doctrine of collateral estoppel where the criminal defendant/claimant has been denied relief in prior criminal postconviction relief proceedings on the same factual circumstances and on ineffective assistance grounds. The district court concluded that it was bound by our decision in Trucking Employees of North Jersey Welfare Fund, Inc. v. Romano, 450 So.2d 843 (Fla. 1984), but noted that, absent Romano, it would rule to the contrary. The district court then certified the following question as one of great public importance:
Whether identity of parties or their privies continues to be a prerequisite in Florida to application of the doctrine of collateral estoppel.
Ward v. Zeidwig, 521 So.2d at 219. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We rephrase the question as follows:
Whether identity or mutuality of the parties or their privies is a prerequisite in Florida to the defensive application of the doctrine of collateral estoppel in the criminal-to-civil context.
For the reasons expressed, we answer the certified question in the negative and approve the use of defensive collateral estoppel to prevent a criminal defendant, as a plaintiff, from relitigating the same issue which has been litigated in prior criminal proceedings. In so doing, we also approve the rationale expressed in the Restatement (Second) of Judgments § 85 (1982) entitled "Effect of Criminal Judgment in Subsequent Civil Action."
The facts establish that the respondent, Joseph Ward, was a criminal defendant and *210 a Fort Lauderdale policeman at the time of the offense, and was represented by the petitioner, Attorney Howard M. Zeidwig. We restate the pertinent facts from the district court of appeal opinion:
Ward was charged with and convicted of conspiracy to import and distribute marijuana. Ward's first conviction was reversed but, after retrial, his second conviction was affirmed on appeal.
A summary of the facts in the criminal case are set out in the report of the first appeal, United States v. Meacham, 626 F.2d 503, 506 (5th Cir.1980) (footnote omitted):
The evidence establishes that the appellants [including Ward] conspired to import marijuana from Colombia into the United States. They arranged to have a pilot named Travis Paul and a copilot Paul had selected fly from Ocean Springs, Mississippi, to Colombia to get a load of marijuana. The two pilots were to have flown the marijuana from Colombia to a small airstrip in Newborn, Georgia. Much to the appellants' distress, Paul turned out to be a Drug Enforcement Administration (DEA) informant, and the copilot turned out to be an undercover agent. On October 8, 1978, at the direction of the appellants, Paul and the copilot began their flight in a plane owned by Metsger. Just before reaching the Colombian coast, the plane developed fuel problems and crash-landed in the sea. The crew of a passing ship rescued Paul and the copilot.
On the night of October 10, DEA Special Agent Jack Taylor, who was in charge of the investigation, staged the return of Paul and the copilot to Newborn. Two of the defendants were apprehended at the Newborn airstrip that night. The others were arrested during the following weeks.
At his criminal trial, appellant, a Fort Lauderdale policeman during the time of the conspiracy, contended that he had been working undercover, albeit without approval of his department, against the other defendants and that therefore he did not have the criminal intent required for conviction of the crime. He testified that he had been in contact during the conspiracy with a DEA agent in Connecticut named Hoyt, and had kept Hoyt advised of the activities of the other four defendants. Hoyt, however, testified that although he had spoken on the telephone with appellant in September and October, appellant had reported nothing of value with respect to the case. 626 F.2d at 510. The factual issue, therefore, was whether appellant had in reality been working undercover or had simply "pretended" to be working undercover so as to provide a bogus defense in the event of prosecution. The jury resolved this question against appellant in both trials.
After appellant's second conviction was affirmed on appeal, he filed a motion to vacate, modify or set aside his sentence pursuant to 28 U.S.C. § 2255, on the grounds of ineffective assistance of counsel.
At the hearing on this motion appellant testified that he had taped several telephone conversations with Hoyt, including a conversation on September 21, 1978, during which appellant told Hoyt some of the details of the drug operation, including the names of several of the participants, where the plane was to land upon its return, and the airplane's "N" number. Two former fellow Fort Lauderdale police officers testified that they had listened to the tape of the September 21 conversation near the end of September, and corroborated appellant's version of what the tape revealed. An affidavit of a third police officer stated that he had been with appellant on September 21, 1978, and had overheard appellant's side of the conversation with Hoyt, and that he also had listened to the tape.
Appellant further testified at the hearing on the motion that he had told Zeidwig that he had a tape of the September 21 conversation with Hoyt, but that Zeidwig had refused to listen to the tape, had told appellant that the tape was illegal and inadmissible, and that appellant should destroy the tape. Before his second *211 trial appellant again mentioned the tape to Zeidwig but Zeidwig became very upset, according to appellant, because appellant had not destroyed the tape, and again told appellant that the tape was illegal and inadmissible. Thereafter, appellant did destroy the tape.

Testifying by deposition, Zeidwig explained that he knew about the tape but he felt it unnecessary to listen to it because appellant had explained to him what was on the tape, and that he (Zeidwig) had decided not to attempt to introduce the tape into evidence because he thought it would hurt his client's case.

After the hearing the court denied appellant's motion to vacate, making the following detailed findings of fact and law:
1. The Court, having observed the witnesses testify at trial, credits the testimony of agent Hoyt and discredits the testimony of Ward in respect to what Ward told Hoyt on September 21, 1978. The Court finds that Ward called Hoyt on September 21, but that he did not inform Hoyt of the details of the Alabama smuggling operation;
2. Any tape recording of the September 21, 1978 conversation would have substantiated finding number 1;
3. Any tape recording wherein Ward advised Hoyt of any details of the smuggling operation would have taken place after September 21, 1978;
4. Hoyt called Ward on September 22, 1978 and was informed by Ward that he was going to assist a friend in purchasing a DC-3 in Texas which would be used to haul freight for Litton Industries and for carrying skydivers;
5. Jerry Pickett could not testify at Ward's second trial whether he was in fact at Ward's house on September 21, 1978 or whether it was in October of 1978. The Court finds that he was not present at Ward's house on September 21, 1978;
6. Gene Dodge had no personal knowledge (except what he was told by Ward) as to the specific date Ward called agent Hoyt with information;
7. Donald Schultz had no personal knowledge (except what he was told by Ward) as to the specific date Ward called agent Hoyt with information;
8. Any taped conversation which Pickett, Dodge, or Schultz heard wherein Ward advised of the marijuana smuggling details would have occurred after September 21, 1978;
9. From August 1978 through October 10, 1978, Ward was not acting under the authority of the Fort Lauderdale Police Department or any agency of the DEA;
10. Ward initiated no contact with any law enforcement agency or agent Hoyt after September 21, 1978 until he called Hoyt on October 10, 1978 and informed Hoyt that he had some names of some people he expected to be involved in marijuana smuggling;
11. Zeidwig did not listen to Ward's September 21, 1978 tape;
12. The United States had no knowledge that Ward had taped any conversations relative to this case;
13. Zeidwig did advise Ward that he may have violated Florida Statute § 934 [ch. 934] and that in his opinion, he was not within the law enforcement exception;
14. Zeidwig did walk out of his office when Ward attempted to play a tape to him in the presence of Pickett and Dodge because Zeidwig did not want to risk affecting his confidential attorney/client relationship with Ward and because the tapes may have been obtained in violation of Florida Statute § 934 [ch. 934];
15. Zeidwig never advised Ward that the September 21, 1978 tape was inadmissible in Court;
16. Zeidwig never advised Ward that it was a crime to play the tape;
17. Zeidwig never advised Ward to destroy the tape;
18. If in fact Ward did destroy the tape, he did it on his own initiative and not on the advice of Zeidwig.
19. Ward sought to use the September 21, 1978 tape recording during the course of his second trial but Zeidwig *212 made the decision not to use and/or attempt to admit the tape into evidence at trial.
Ward v. Zeidwig, 521 So.2d at 216-18 (citation omitted; emphasis in original).
In the trial court, Zeidwig contended that the above order entered by the federal district court in the habeas corpus proceeding and affirmed on appeal estopped Ward from maintaining this civil malpractice action. Ward responded by asserting that collateral estoppel was inapplicable because the identity of the parties in both lawsuits was not the same, noting that the parties before the federal court were Ward and the United States while the parties in this malpractice action were Ward and Zeidwig. The trial court rejected Ward's claim and granted a summary judgment in favor of Zeidwig on three grounds: (1) Ward's claim was barred by the doctrine of collateral estoppel; (2) Zeidwig and his professional association were immune from liability under the "error in judgment" rule; and (3) Ward was unable to meet the burden of proof to sustain his claim.
The Fourth District Court of Appeal reluctantly reversed, stating:
If this were a case of first impression we would adopt and echo the criticism expressed by Justice Traynor in the following excerpt from his opinion for a unanimous California Supreme Court in Bernhard v. Bank of American [sic] National Trust and Savings Association, 19 Cal.2d 807, 812, 122 P.2d 892, 895 (1942): "No satisfactory rationalization has been advanced for the requirement of mutuality. Just why a party who was not bound by a previous action should be precluded from asserting it as res judicata against a party who was bound by it is difficult to comprehend."
Id. at 219. The district court found itself bound by our decision in Trucking Employees of North Jersey Welfare Fund, Inc. v. Romano, 450 So.2d 843 (Fla. 1984), in which we held that "the well established rule in Florida has been and continues to be that collateral estoppel may be asserted only when the identical issue has been litigated between the same parties or their privies." Id. at 845 (emphasis added).
The basic issue before us is whether we should modify the mutuality of parties requirement when it is asserted in a defensive manner in a criminal-to-civil context. That modification has long been recognized by the United States Supreme Court. In Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), the United States Supreme Court completely abrogated the mutuality requirement in a defensive context and concluded that a defendant may use collateral estoppel defensively to prevent a plaintiff from asserting a claim that the plaintiff had previously litigated and lost against another defendant. It ruled that the defensive use of the doctrine gives a plaintiff strong incentive to join all potential parties in the first action without compromising fairness and promotes the interests of judicial economy. Id. at 328, 91 S.Ct. at 1442. Next, in Parklane Hosiery Co. v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), the United States Supreme Court also restrictively modified the mutuality requirement of the collateral estoppel doctrine in the offensive context. It found that collateral estoppel without mutuality could be used to the extent that the plaintiff could estop or bar his defendant opponent from raising or contesting an identical issue previously decided against that defendant. That Court held that offensive collateral estoppel could be invoked only if the plaintiff could not have been joined in the earlier case with reasonable ease. Id. at 332-33, 99 S.Ct. at 1444-45; see also Cook County v. Lynch, 560 F. Supp. 136 (N.D.Ill. 1982). This constituted a qualified abrogation of the mutuality of parties requirement in the offensive context.
We considered the modification of the mutuality requirement in the offensive context in Trucking Employees. In that case, limited partners, as plaintiffs, had participated in a development of condominiums and brought an action against the general partners and business managers on the grounds of breach of fiduciary duty, conspiracy to defraud, and breach of a limited *213 partnership contract. The plaintiffs sought to invoke the doctrine offensively, asserting liability had been established by the guilty verdict returned against these general partners and business managers on charges of fraud and misrepresentation. The trial court granted the plaintiffs a summary judgment on the basis of offensive collateral estoppel, holding the plaintiffs were entitled to this judgment because of the convictions which followed a guilty verdict. The district court of appeal reversed and we approved that reversal, holding that a litigant who was not a party to a prior criminal proceeding that resulted in a judgment of conviction may not use the judgment of conviction offensively in a criminal proceeding to prevent the same defendant from relitigating issues resolved in an earlier criminal proceeding. In so doing, we recognized that the federal courts had abandoned the requirement of mutuality of parties as a prerequisite to asserting the doctrine of collateral estoppel in an offensive manner.
We explained that we were being asked in Trucking Employees to modify the mutuality requirement and allow offensive collateral estoppel to be utilized on behalf of the plaintiff and to modify our mutuality rule in the same manner as the United States Supreme Court did in Parklane. We rejected that suggestion and determined that "the well established rule in Florida has been and continues to be that collateral estoppel may be asserted only when the identical issue has been litigated between the same parties or their privies." Trucking Employees, 450 So.2d at 845.
It is important to note that the defensive use of collateral estoppel was not an issue in Trucking Employees. We did not consider in that case the mutuality requirement as it applies to defensive collateral estoppel nor did we discuss section 85(2)(a) of the Restatement (Second) of Judgments, which provides, in pertinent part:
With respect to issues determined in a criminal prosecution:
(2) A judgment in favor of the prosecuting authority is preclusive in favor of a third person in a civil action:
(a) Against the defendant in the criminal prosecution as stated in § 29.
The reasoning for the rule is explained by comment "e":
e. Judgment for prosecution: preclusion in favor of third party... . At an earlier period in the development of res judicata doctrine, the "mutuality" requirement was an obstacle to applying issue preclusion in favor of such a third party. That is, since the third party would not have been bound in his civil action if the prosecution had resulted in an acquittal, under the mutuality rule it would follow that the third party could not take advantage of the issue determined in a conviction. However, long before the mutuality rule was repudiated in civil cases, well reasoned decisions had extended the rule of preclusion to operate in favor of third persons where the first action is criminal and the second is civil... .
... The clearest situation is where the person who was convicted of an offense brings an action against the third party to assert a claim that rests on factual premises inconsistent with those established in the criminal prosecution.
In Knoblauch v. Kenyon, 163 Mich. App. 712, 415 N.W.2d 286 (Ct.App. 1987), the Michigan Court of Appeals receded from a strict adherence to the mutuality requirement under facts almost identical to those in the instant case. There, the criminal defendant, after being found guilty of sexual assault, released his attorney and moved for a new trial claiming ineffective assistance of counsel and the existence of new evidence. The trial judge initially granted the motion on the grounds that the attorney should have introduced a potentially exonerating medical report, but, on a subsequent prosecutorial motion, changed his mind and vacated the order granting the new trial. The criminal defendant appealed and the Michigan Court of Appeals concluded that there was no denial of effective assistance of counsel due to the other strong evidence of his guilt. The criminal defendant, as a plaintiff, then instituted a legal malpractice action against his lawyer, asserting essentially the same grounds as *214 were previously raised in the postconviction relief proceedings. The trial court concluded that "the standards for determining ineffective assistance of counsel in malpractice were essentially the same and because the matter in dispute had been previously decided in the criminal matter and again on appeal, collateral estoppel barred relitigation of the issue." 163 Mich. App. at 712, 415 N.W.2d at 287.
While recognizing that the defendant attorney was not a party in the underlying postconviction action nor a privy "defined as `one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase,'" the court approved the application of defensive collateral estoppel to bar the plaintiff's action for malpractice, applying section 85 of the Restatement (Second) of Judgments. Id. at 720, 415 N.W.2d at 290 (quoting Howell v. Vito's Trucking & Excavating Co., 386 Mich. 37, 191 N.W.2d 313 (1971) (quoting Bernhard v. Bank of America Nat'l Trust & Savings Ass'n, 19 Cal.2d 807, 122 P.2d 892 (1942))). The Michigan court, in rejecting this claim for malpractice, noted that
a criminal defendant may establish ineffective assistance of counsel even where his attorney performed at least as well as an attorney with ordinary training and skill  the measure for legal malpractice  if he can show a serious mistake which might have resulted in acquittal... . [T]his "two bites at the apple" approach used to establish ineffective assistance of counsel is less stringent for the person claiming substandard representation than the measure used in a claim of legal malpractice."
Id. at 721, 451 N.W.2d at 289. It concluded that "the concept behind ineffective assistance of counsel is the right to reasonably competent representation, and that `[t]he concept of reasonable competence is also the standard "traditionally and universally employed as the measure of a lawyer's civil liability."'" Id. (citations omitted). In the final analysis, it determined that the legal standards for "ineffective assistance of counsel in criminal proceedings and for legal malpractice in civil proceedings are equivalent for the purposes of application of the doctrine of collateral estoppel." Id.
We fully agree with the Knoblauch decision and hold that defensive collateral estoppel applies in this criminal-to-civil context. We conclude that, where a defendant in a criminal case has had a full and fair opportunity to present his claim in a prior criminal proceeding, and a judicial determination is made that he has received the effective assistance of counsel, then the defendant/attorney in a subsequent civil malpractice action brought by the criminal defendant may defensively assert collateral estoppel.
If we were to allow a claim in this instance, we would be approving a policy that would approve the imprisonment of a defendant for a criminal offense after a judicial determination that the defendant has failed in attacking his conviction on grounds of ineffective assistance of counsel but which would allow the same defendant to collect from his counsel damages in a civil suit for ineffective representation because he was improperly imprisoned. To fail to allow the use of collateral estoppel in these circumstances is neither logical nor reasonable.
The public policy justification for the application of collateral estoppel in this type of circumstance was well stated by the court in Johnson v. Raban, 702 S.W.2d 134 (Mo. Ct. App. 1985), where it stated:
[P]ublic policy dictates that a person convicted of a crime who has failed in his attack upon his conviction both directly and collaterally should not be permitted to recover against his attorney in a civil malpractice action for damages allegedly arising out of the attorney's handling of his defense. It would undermine the effective administration of the judicial system to ignore completely a prior decision of a court of competent jurisdiction in this state on the same issue which plaintiff seeks to relitigate in a subsequent action.
Id. at 138.
Accordingly, we find defensive collateral estoppel should be applied in this criminal-to-civil *215 context. We quash the decision of the district court of appeal and remand with directions to affirm the judgment entered by the trial court. The rephrased question is answered in the negative.
It is so ordered.
EHRLICH, C.J., and McDONALD, SHAW, GRIMES and KOGAN, JJ., concur.
BARKETT, J., did not participate in this case