968 F.2d 1101
 Ramon Orlando VAZQUEZ, Plaintiff-Appellant,
v.
METROPOLITAN DADE COUNTY, a political subdivision of the
State of Florida, Defendant-Appellee,
Timothy Addison, Donald Askew, Albert Bonnani, James Bowers,
Fred Cockerham, William Henning, James Leggett, Kevin Long,
Bobby Jones, A Public Safety Director of Dade County,
Individually and in their respective official capacities, Defendants.
 No. 91-5584.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 13, 1992.
 
 Robert E. Weisberg, Coral Gables, Fla., for plaintiff-appellant.
 James Allen, Asst. County Atty., Robert A. Ginsburg, Dade County Atty., Miami, Fla., for defendant-appellee.
 Appeal from the United States District Court for the Southern District of Florida.
 Before KRAVITCH and HATCHETT, Circuit Judges, and BROWN*, Senior Circuit Judge.
 KRAVITCH, Circuit Judge:
 
 
 1
 Plaintiff-appellant Vazquez brought suit pursuant to 42 U.S.C. § 1983 against defendant-appellee Metropolitan Dade County ("Dade County") and several of the County's police officers, claiming police misconduct during an August 18, 1981, shootout at Vazquez's home. Plaintiff alleged that the individual officers used excessive force against the plaintiff during that shootout, in violation of Vazquez's rights under the Fourth and Fourteenth Amendments, and that Dade County also violated plaintiff's constitutional rights by creating an atmosphere in which such uses of excessive force customarily were condoned. By stipulation, the parties agreed to the dismissal of the individual defendants. Dade County moved for summary judgment on the grounds that Vazquez was collaterally estopped from bringing the section 1983 action by virtue of his criminal conviction for culpable negligence, which arose out of the same August 18, 1981, shooting incident giving rise to Vazquez's civil suit. The district court granted Dade County's motion for summary judgment. We reverse, and remand this case to the district court.
 
 I. BACKGROUND AND COURSE OF PROCEEDINGS
 A. August 18, 1981
 
 2
 At all times relevant to this case, appellant Vazquez resided with his brother, Moises Faroy, Faroy's wife, and the Faroy's two children at 347 Southwest 77th Avenue in Dade County, Florida. The Dade County police previously had installed an electronic surveillance device in Faroy's car in connection with a kidnapping case in which Faroy had some suspected involvement.[1] After having recovered the kidnapping victim on the afternoon of August 18, 1981, eight members of the Dade County Police Department[2] returned to Vazquez's residence at approximately 10 p.m. that evening to retrieve the surveillance device and to ask Faroy questions about the kidnapping. The police did not arrive at the residence with the intention of arresting anyone. While investigating the kidnapping, however, the police had been involved in a couple of exchanges of gunfire, and as a precautionary measure, were carrying various firearms, including shotguns, revolvers, and semi-automatic weapons. Before making any contact with the occupants of the house, the police surrounded the premises.
 
 
 3
 The police account of the events that then transpired is as follows: the police approached the door with the intention of making their intended inquiries. The officers, all of whom were members of Dade County's undercover police force, were in civilian clothes, except that they wore police raid jackets and baseball caps which readily identified them as police officers. After the first officers--Askew and Cockerham--had neared the residence and were within a few feet of the door, they noticed activity within the house and yelled "police" in an effort to identify themselves. They then heard someone within the house say "policia," and within a matter of seconds were met with several gunshots coming from within the house. The police then scrambled to positions of safety and returned the gunfire. The testimony of the various police officers at Vazquez's criminal trial differed as to whether the police encountered further resistance after the initial discharge of six bullets from inside the Vazquez/Faroy home.
 
 
 4
 Vazquez's account of the events of August 18 is as follows: Vazquez's brother, Moises Faroy, was a known opponent of the Castro government, and had been subjected to various attempts on his life by pro-Castro forces. Vazquez, the Faroys, and some friends were watching television around 10 p.m. when Vazquez noticed several armed individuals approaching the house. He did not realize they were police officers, and thought that they had come for his brother as part of a pro-Castro mission. Vazquez alerted the others in the house, and told someone to call the police. He then took a revolver that was in the living room and fired six shots at the door in an attempt to provide cover while the other members of the family reached positions of safety. In response to these shots, which Vazquez contended were not aimed at anyone and were merely defensive in design, the armed individuals outside the house returned a steady stream of fire. The individuals inside the house became aware that their adversaries were police officers only after the gunfire had subsided.
 
 
 5
 Both sides agree on the following facts: the exchange of gunfire lasted approximately 10-20 minutes. Vazquez was wounded in the hand, and Moises Faroy was killed. Further, notwithstanding Vazquez's contentions at oral argument, it is apparent that Vazquez fired the first shots in this encounter.
 
 B. Subsequent Criminal Proceedings
 
 6
 Vazquez was charged by information with the Attempted First-Degree Murder of Officers Askew and Cockerham in connection with the events of August 18, 1981. Vazquez's defense at trial was two-pronged. First, Vazquez argued that when he fired the six gunshots through the front door of his residence, he did not possess the requisite intent to murder Officers Askew and Cockerham. Vazquez contended that he fired those shots in an attempt to scare off the assailants, who he thought had come to abduct his brother, and to give his family time to seek shelter. Second, Vazquez argued self-defense or "justification"--that is, that his use of deadly force was a reasonable response to the threat posed by the armed individuals, whose identity was unknown to Vazquez at the time, outside his home.
 
 
 7
 At the close of trial, the court instructed the jury on the crime charged, on several lesser-included offenses, and on Vazquez's justification defense. The lesser-included offenses on which the trial court instructed the jury included Culpable Negligence, a second-degree misdemeanor, Fla.Stat.Ann. § 784.05, which has been defined by the Florida courts as "reckless indifference or grossly careless disregard for the safety of others." J.C.M. v. State, 375 So.2d 873, 873 (Fla.App.1979) (quoting State v. Greene, 348 So.2d 3, 4 (Fla.1977)). The court's instruction on culpable negligence, to which neither party objected, was as follows:
 
 
 8
 I will now define Culpable Negligence for you. Each of us has a duty to act reasonable [sic] towards others. If there is a violation of that duty, without any conscious intent to harm, that violation is negligence. But Culpable Negligence is more than a failure to use ordinary care for others. For negligence to be called culpable it must be gross and flagrant. The negligence must be committed with an utter disregard for the safety of others. Culpable Negligence is consciously doing an act or following a course of conduct that the Defendant must have known or reasonably should have known was likely to cause death or great bodily harm.
 
 
 9
 The court's instruction on self-defense, which the parties also accepted, was as follows:
 
 
 10
 Mr. Vazquez was justified in the use of deadly force if he reasonably believed that it's [sic] use was necessary to prevent imminent death or great bodily harm to himself or another at the hands of the [police]. In deciding whether the Defendant was justified in the use of force likely to cause death or great bodily harm, you must judge him by the circumstances with which he was surrounded at the time the force was used, the danger facing the Defendant need not have been actual, however, to justify the use of force likely to cause death or great bodily harm, the appearance of danger must have been so real that a reasonably cautious and prudent person under the circumstances would have believed that the danger could be avoided only through the use of force. The Defendant must have actually believed that the danger was real. The defendant cannot justify his use of force likely to cause death or great bodily harm unless he used every reasonable means within his power and consistent with his safety to avoid the danger before resorting to that force.
 
 
 11
 The jury returned a verdict of guilty on the lesser-included offense of Culpable Negligence only, finding Vazquez not guilty of Attempted First-Degree Murder. The jury issued a general verdict, and therefore did not explain its decision.
 
 C. Vazquez's Section 1983 Action
 
 12
 Subsequent to this conviction, Vazquez filed an action under 42 U.S.C. § 1983 against the eight police officers involved in the August 18 shootout, Metro Dade County, and Bobby Jones, in his individual capacity and his official capacity as Public Safety Director of Dade County, alleging that the officers' actions on the night of August 18 violated Vazquez's rights under the Fourth and Fourteenth Amendments, and that Dade County was also liable under section 1983 because it had by its policymaking decisions given its implicit sanction to the allegedly unlawful actions taken by the officers on August 18. Plaintiff also included several pendent state tort claims in his complaint.
 
 
 13
 The defendants first moved for summary judgment on the grounds that (1) the individual police officers did not violate the plaintiff's rights; (2) that the individual defendants acted in good faith and were therefore entitled to qualified immunity; and (3) that there did not exist a custom or policy on the part of Dade County that would render it liable for the actions of its officials. The district court denied the motion for summary judgment. Vazquez v. Metropolitan Dade County, et al., No. 84-2865-CIV-HOEVELER (S.D.Fla. July 14, 1989) (hereinafter "July 14 Order").[3] On August 13, 1990, with the parties' agreement, the district court referred this case to trial before a United States Magistrate Judge.
 
 
 14
 Dade County then filed again for summary judgment against Vazquez, this time claiming that Vazquez's prior conviction for culpable negligence collaterally estopped him from pursuing his section 1983 action against the County. In essence, the County contended that the criminal jury's rejection of Vazquez's justification defense in the context of finding Vazquez guilty of culpable negligence resolved conclusively the issue of whether the police had acted reasonably on the night of August 18, 1981, and thereby collaterally estopped Vazquez from bringing his section 1983 action. Subsequent to the filing of this summary judgment motion, plaintiff voluntarily dismissed from his lawsuit all the individual police officers and defendant Bobby Jones, leaving only Dade County as a defendant.
 
 
 15
 In an Order dated June 7, 1991, the Magistrate Judge (hereinafter "the district court") granted Dade County's motion for summary judgment, holding that Vazquez was collaterally estopped from bringing his section 1983 action by virtue of his prior conviction for culpable negligence. Vazquez v. Metropolitan Dade County, et al., No. 84-2865-CIV-HOEVELER (S.D.Fla. June 7, 1991) (hereinafter "June 7 Order"). The court noted that the preclusive effect of a state court criminal judgment on federal actions is a question of state law, and held that the Florida Supreme Court's decision in Zeidwig v. Ward, 548 So.2d 209 (Fla.1989), in which the state supreme court approved the use of defensive collateral estoppel in a criminal-to-civil context without mutuality of parties, controlled this case.
 
 
 16
 The district court reasoned that Zeidwig permitted the application of collateral estoppel if the civil defendant could show "that the issue which was previously litigated in the prior criminal proceeding is the same issue being litigated here." June 7 Order at 6. The court then found that "the issue raised herein is identical to the issue previously litigated in the State Court criminal proceeding." Id. The court stated in particular that "it has already been determined in the previous criminal proceeding that plaintiff was at fault for the shooting and resultant injuries that occurred at the property. It necessarily follows that plaintiff's rights were not violated by either the officers [sic] actions and/or the county's customs or policies." Id. at 6.
 
 
 17
 The court proceeded to explain that in the state criminal trial, Vazquez had placed at issue the conduct of the police officers by claiming his own conduct was a justifiable response to the threat posed by the police; the court noted that "[t]he only injury plaintiff can claim is having been shot. Plaintiff, however, has already been determined at fault for the shooting when the jury at his criminal trial determined that his action of shooting a revolver through the closed front door was not justified." Id. at 9. Accordingly, the court held plaintiff's claim to be barred by collateral estoppel, and granted Dade County's motion for summary judgment. Plaintiff appeals.
 
 II. STANDARD OF REVIEW
 
 18
 We review de novo a grant of summary judgment on grounds of collateral estoppel. Matter of McWhorter, 887 F.2d 1564, 1566 (11th Cir.1989). The factual determinations underlying the court's legal conclusion--such as the determination that an issue was actually litigated in the prior proceeding--are to be upheld on appeal unless clearly erroneous. Richardson v. Alabama State Bd. of Education, 935 F.2d 1240, 1244 (11th Cir.1991).
 
 
 19
 With respect to reasonable factual disputes left unresolved by the district court, these disputes, like any factual dispute in the context of summary judgment, are to be resolved in favor of the non-movant--here, Vazquez. Barnes v. Southwest Forest Industries, 814 F.2d 607, 609 (11th Cir.1987).
 
 III. CHOICE OF LAW
 
 20
 As the district court correctly noted, under the Full Faith and Credit Clause of the United States Constitution[4] and the federal full faith and credit statute implementing that constitutional provision,[5] federal courts considering whether to give preclusive effect to state court judgments must apply the State's law of collateral estoppel. Migra v. Warren City School Dist., 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). The rules of collateral estoppel apply with full force to civil rights actions arising under 42 U.S.C. § 1983. Allen v. McCurry, 449 U.S. 90, 103-05, 101 S.Ct. 411, 419-21, 66 L.Ed.2d 308 (1980). Thus, this court must review the district court's analysis of Florida collateral estoppel law to determine whether Vazquez's conviction for culpable negligence estops his section 1983 action.
 
 IV. ANALYSIS
 A. Florida Collateral Estoppel Law
 
 21
 As noted supra, the district court held and the appellee contends that the Florida Supreme Court's decision in Zeidwig v. Ward, 548 So.2d 209 (Fla.1989), controls this case because it permits the defensive use of collateral estoppel in a criminal-to-civil context even in the absence of mutuality of parties. Although we agree that Zeidwig allows generally for defensive uses of collateral estoppel in criminal-to-civil contexts without mutuality of parties, we disagree with the district court's interpretation of the legal standard formulated in that case, and, ultimately, therefore, with the court's conclusion that Vazquez's criminal conviction forecloses the instant section 1983 action.
 
 
 22
 In Zeidwig, a criminal defendant brought an action for state post-conviction relief alleging ineffective assistance of counsel; this claim was denied. The criminal defendant then brought a malpractice action against his attorney on the basis of the attorney's representation of the criminal defendant in the case giving rise to the defendant's claim of ineffective assistance of counsel.
 
 
 23
 The Florida Supreme Court held that "where a defendant in a criminal case has had a full and fair opportunity to present his claim in a prior criminal proceeding, and a judicial determination is made that he has received the effective assistance of counsel, then the defendant/attorney in a subsequent civil malpractice action brought by the criminal defendant may defensively assert collateral estoppel." Zeidwig, 548 So.2d at 214. On a more general level, the Florida Supreme Court in Zeidwig "approve[d] the use of defensive collateral estoppel to prevent a criminal defendant, as a plaintiff, from relitigating the same issue which has been litigated in prior criminal proceedings." Id. at 209. Thus, it is clear that Florida does permit the use of defensive collateral estoppel in a criminal-to-civil context. The question remains, however, what circumstances give rise to an estoppel under Florida law. The parties disagree on this issue.
 
 
 24
 Appellant contends that the proper standard for applying collateral estoppel under Florida law is identical to the federal standard announced in this court's decision in Precision Air Parts v. Avco Corp., 736 F.2d 1499 (11th Cir.1984), cert. denied, 469 U.S. 1191, 105 S.Ct. 966, 83 L.Ed.2d 970 (1985), in which we listed three prerequisites to a determination of collateral estoppel: "(1) ... the issue at stake [must] be identical to the one involved in the prior litigation; (2) ... the issue [must] have been actually litigated; and (3) ... the determination of the issue in the prior litigation [must] have been a critical and necessary part of the judgment in that earlier decision." Avco, 736 F.2d at 1501 (quoting Deweese v. Town of Palm Beach, 688 F.2d 731, 733 (11th Cir.1982)). Although appellant concedes that Dade County has satisfied the first two prongs of this test, he argues that the County has not satisfied the third prong, and that summary judgment was therefore inappropriate.
 
 
 25
 In response, appellee contends that Florida law generally requires only that "the issues [in the respective civil and criminal cases] be identical, and that the particular matter be fully litigated and determined in a contest which results in a final decisions [sic] of a court of competent jurisdiction." Appellee's Brief at 11, citing Mobil Oil Corp. v. Shevin, 354 So.2d 372, 374 (Fla.1978). Appellee argues that the federal requirement that "the determination of the issue in the prior litigation have been a critical and necessary part of the judgment in that earlier action," Avco, 736 F.2d at 1501, is irrelevant in this case as a matter of Florida law, and that in Vazquez's criminal trial every aspect of the police's conduct on August 18, 1981, was fully litigated. Notwithstanding the County's contentions, we agree with Vazquez that the federal standard announced in Avco also supplies the legal standard for collateral estoppel as a matter of Florida law.
 
 
 26
 In Zeidwig, the Florida Supreme Court "approve[d] the rationale expressed in the Restatement (Second) of Judgments § 85 (1982), entitled 'Effect of Criminal Judgment in Subsequent Civil Action,' " in upholding the use of defensive collateral estoppel in a non-mutual, criminal-to-civil context. Zeidwig, 548 So.2d at 209. Section 85(2)(a) of the Restatement (Second) adopts in the criminal-to-civil context the standards for issue preclusion contained in Section 29 of the Restatement (Second), which discusses collateral estoppel in the context of civil-to-civil cases without mutuality.[6] Section 29, in turn, adopts the standard employed in Section 27 of the Restatement (Second) for assessing claims of collateral estoppel in mutual, civil-to-civil situations.[7]
 
 
 27
 Section 27 of the Restatement (Second) states as follows:
 
 
 28
 When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.
 
 
 29
 Restatement (Second) of Judgments, § 27 (1982) (emphasis added). Comment h to Section 27 adds:
 
 
 30
 If issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded. Such determinations have the characteristics of dicta, and may not ordinarily be the subject of an appeal by the party against whom they were made. In these circumstances, the interest in providing an opportunity for a considered determination, which if adverse may be the subject of an appeal, outweighs the interest in avoiding the burden of relitigation.
 
 
 31
 Thus, sections 27 and 29 of the Restatement (Second) indicate that prior litigation of an issue does not give rise to an estoppel unless resolution of that issue was essential to the judgment in the prior case. See Owens v. Treder, 873 F.2d 604, 607 (2d Cir.1989) (interpreting section 27); Martin v. Malhoyt, 830 F.2d 237, 264 (D.C.Cir.1987) (interpreting sections 27, 29); Cinelli v. City of Revere, 820 F.2d 474, 479 (1st Cir.), cert. denied, 485 U.S. 1037, 108 S.Ct. 1600, 99 L.Ed.2d 915 (1987) (interpreting sections 27, 29).
 
 
 32
 Given that Section 85 of the Restatement (Second), which is expressly adopted in Zeidwig, incorporates the standards set forth in Restatement sections 27 and 29, it is clear that as a matter of Florida law as well as federal law, collateral estoppel is not appropriate when an issue forming the basis for a civil suit was not necessarily resolved in a prior criminal proceeding. Dade County is not entitled to collateral estoppel in this case unless a determination of the reasonableness of the Dade County Officers' conduct on August 18 was essential to the jury's determinations that Vazquez (1) was culpably negligent and (2) was not entitled to assert a defense of justification.
 
 
 33
 B. Necessary Resolution of the Excessive Force Issue
 
 
 34
 In granting summary judgment, the district court concluded that because the defendant was "at fault" for the shootings that took place on August 18, 1981, he was precluded from contending that the police officers used excessive force on that evening. The court also noted that because the jury had concluded that the attack on Vazquez was not wrongful, and that therefore he was not entitled to a justification defense, any injury arising out of that attack was not actionable under section 1983.
 
 
 35
 The district court, however, did not discuss whether a determination of the police's conduct on August 18 was essential to the judgment against Vazquez, finding only that "the issue raised [by Vazquez's section 1983 suit] is identical to the issue previously litigated in the State Court criminal proceeding." June 7 Order at 6. Application of the proper state law criteria to Dade County's claim of collateral estoppel reveals that the district court erred in granting the County's motion for summary judgment. Vazquez's conviction for culpable negligence and the jury's rejection of Vazquez's justification defense does not necessarily foreclose the conclusion that the police used excessive force against him, and therefore cannot estop him from bringing his section 1983 action. Reexamination of the August 18 gunfire exchange reinforces our holding.
 
 
 36
 The jury convicted Vazquez of culpable negligence, in essence concluding that his act of shooting six bullets into the front door of his home constituted flagrant disregard for the safety of others. The jury's rejection of Vazquez's defense of justification reflected its belief that Vazquez's actions in shooting the gun did not constitute a reasonable response to the situation facing him. The jury's verdict, however, in no way ruled on the propriety of the actions of the Metro Dade County police officers after Vazquez committed his act of culpable negligence. It is this series of actions that provides the basis for Vazquez's allegations of excessive force.
 
 
 37
 In Graham v. Conner, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the United States Supreme Court stated that "the question [in a Fourth Amendment excessive force case] is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." Graham v. Conner, 490 U.S. at 397, 109 S.Ct. at 1872. The question raised by Vazquez's section 1983 action, therefore, is whether the Dade County police officers' response to Vazquez's act of culpable negligence was "objectively reasonable." The fact that the act to which the police responded was a criminal act does not foreclose the possibility that the officers' response also was illegal.
 
 
 38
 This case is similar to several cases in which courts have held that a criminal conviction does not estop a section 1983 claim based on alleged police misconduct that occurred simultaneous to or after the criminal action giving rise to the conviction. In Hernandez v. City of Los Angeles, 624 F.2d 935 (9th Cir.1980), the Ninth Circuit reversed the trial court's grant of summary judgment in favor of a section 1983 defendant, holding that the section 1983 plaintiff's conviction for resisting arrest did not estop him from arguing that the police used excessive force in making the arrest. The court of appeals noted that the criminal jury's rejection of plaintiff's self-defense theory did not necessarily reflect the jury's belief that the police had not used excessive force since "[t]he jury could have found ... that both Hernandez and the police officers used excessive force." Hernandez, 624 F.2d at 938.
 
 
 39
 In Williams v. Liberty, 461 F.2d 325 (7th Cir.1972), the Seventh Circuit visited a similar situation, and held that a section 1983 plaintiff's claim of police brutality was not estopped by the plaintiff's conviction of battery upon the civil defendant police officer: "[W]e are unable to see why an officer who is attacked by a prisoner could not use more force than reasonably necessary in defending himself, and be subject to the liability for excessive force." Williams, 461 F.2d at 328. See Ridley v. Leavitt, 631 F.2d 358, 359 (4th Cir.1980); Courtney v. Reeves, 635 F.2d 326, 329 (5th Cir. Unit A 1981); O'Leary v. Luongo, 692 F.Supp. 893, 903 (N.D.Ill.1988); Pastre v. Weber, 717 F.Supp. 987, 992 (S.D.N.Y.1988).
 
 
 40
 Like the Seventh Circuit in Williams, we are unable to conclude that Vazquez's conviction for culpable negligence necessarily resolved the question of whether the Dade County officers who were the targets of Vazquez's criminal conduct used force beyond what was reasonably necessary under the circumstances in response to that conduct. Although Vazquez during his criminal trial undoubtedly raised the issue of the police's conduct after he fired his six shots, nothing in the jury's general verdict addresses this issue; indeed, the jury in no way needed to address this issue to find Vazquez guilty of culpable negligence, and to reject his defense of justification.[8]
 
 
 41
 Thus, as a matter of Florida law, the application of collateral estoppel in this case was improper, and the district court's grant of summary judgment was in error. To conclude otherwise would give law enforcement authorities carte blanche to respond as they please to criminal behavior. Law enforcement authorities remain bound by the standard announced in Graham v. Conner, supra, and must answer to claims of excessive force even if such force was in response to criminal conduct.
 
 V. CONCLUSION
 
 42
 For the foregoing reasons, we REVERSE the district court's grant of summary judgment to Dade County, and REMAND this case for proceedings consistent with this opinion.[9]
 
 
 
 *
 Honorable Bailey Brown, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation
 
 
 [1]
 Faroy was not an actual suspect in the kidnapping case. Rather, he had acted as a confidant to the victim's family, and the police believed that he might have been privy to information supplied by the kidnappers to the family and vice versa
 
 
 [2]
 These members included Lieutenant James Bowers, Sergeant William Henning, Sergeant Albert Bonnani, and Officers Timothy Addison, Donald Askew, Fred Cockerham and Kevin Long
 
 
 [3]
 After plaintiff appealed the subsequent summary judgment against him, appellee Dade County filed a cross-appeal regarding the district court's denial of its initial motion for summary judgment. This court dismissed voluntarily the cross-appeal pursuant to Rule 42 of the Federal Rules of Appellate Procedure and Eleventh Circuit Rule 42-1(a)
 4 U.S. Const., Art. IV, § 1.
 
 
 [5]
 28 U.S.C. § 1738
 
 
 [6]
 "With respect to issues determined in a criminal prosecution:
 ... (2) A judgment in favor of the prosecuting authority is preclusive in favor of a third person in a civil action:
 (a) against the defendant in the criminal prosecution as stated in [Restatement] § 29...."
 Restatement (Second) of Judgments, § 85(2)(a).
 
 
 [7]
 "A party precluded from litigating an issue with an opposing party, in accordance with §§ 27 and 28, is also precluded from doing so with another person...." Restatement (Second) of Judgments, § 29; See also Id. at § 29, Comment (a)
 
 
 [8]
 The criminal jury's general verdict did not resolve conclusively whether Vazquez shot at the police officers after his initial volley. Vazquez claims that he did not, and the deposition testimony and evidence from the criminal trial does not provide a clear answer to this question. Thus, for purposes of reviewing a grant of summary judgment, we must accept as true Vazquez's allegation that he did not fire at the police after his initial volley. See Section II, supra
 
 
 [9]
 Our discussion supra focuses on Vazquez's section 1983 action. It is unclear whether Vazquez's pendent state claims were addressed in the summary judgment proceeding by either the parties or the district court. The parties' briefs on appeal do not discuss these claims either. To the extent the district court held Vazquez to be estopped from bringing his pendent state tort claims against Dade County, our holding regarding the collateral estoppel effect of Vazquez's criminal conviction on his section 1983 action applies with equal force to Vazquez's pendent state tort claims