831 So.2d 226 (2002)
Gary MASSEY, Appellant,
v.
Calvin F. DAVID, Appellee.
No. 1D01-4950.
District Court of Appeal of Florida, First District.
October 30, 2002.
Rehearing Denied December 4, 2002.
*228 Joseph W. Little, Esquire, Gainesville, for Appellant.
John H. Pelzer, of Ruden, McClosky, Smith, Schuster & Russell, P.A., Ft. Lauderdale and John A. DeVault, III, of Bedell, Dittmar, DeVault, Pillans & Coxe, Jacksonville, for Appellee.
BENTON, J.
Gary Massey appeals the final summary judgment, entered against him on Calvin F. David's motion, that denied him relief on res judicata and collateral estoppel theories. We reverse and remand for further proceedings.

I.
Mr. Massey brought suit against Mr. David, as well as Ruden, McClosky, Smith, Schuster, and Russell, P.A. (Ruden McClosky), stating various claims in connection with their earlier representation of him while he was the plaintiff in a separate, "toxic tort" lawsuit. Six theories are alleged: breach of fiduciary duty, deceit, intentional infliction of emotional distress, deprivation of property without due process of law, trespass to property, and negligence. Ruden McClosky is not a party to the present appeal, having earlier prevailed on its own motion for summary judgment, and on the ensuing appeal.
Mr. David filed his motion for summary judgment on August 30, 2001, arguing res judicata and collateral estoppel. The motion proceeds on the theory that the issues raised in Mr. Massey's second amended complaint are the same as the issues resolved by the summary judgment in favor of Ruden McClosky, and in a still earlier charging lien proceeding in the original toxic tort litigation.
For purposes of decision, we assume that the issues raised in the present proceeding were all raised (defensively) in the charging lien proceeding in the underlying toxic tort case, and that all the issues raised by the claims against Mr. David were raised against Ruden McClosky and disposed of as to Ruden McClosky by the judgment entered in Ruden McClosky's favor earlier in the present proceeding.
On October 24, 2001, Mr. Massey filed a memorandum in opposition to summary judgment,[1] asserting that Mr. David was *229 not a party either to the summary judgment entered in Ruden McClosky's favor in the present case or to the charging lien proceeding in the underlying toxic tort case. We find merit in Mr. Massey's position. Mr. David was not a party, actual or virtual, either to the charging lien proceeding or to the present proceeding at the time the summary judgment was entered in favor of Ruden McClosky. The record does not establish that he was in privity with Ruden McClosky as regards either proceeding.

II.
Injured by exposure to toxic chemicals, Mr. Massey originally employed Merkle & Magri, P.A., to represent him in a suit he brought against those responsible for the exposure.[2] Later he discharged Merkle & Magri, P.A., and contracted for legal representation with Ruden McClosky and Mr. David, who "was authorized to and functioned as a partner, employee or agent of Ruden [McClosky]." (Denying vicarious liability, Mr. David and Ruden McClosky each admitted that Mr. David "had an of counsel relationship with Ruden McClosky.")
Mr. David and Ruden McClosky agreed to represent Mr. Massey, but insisted on terms that included the following:
The Client and Lawyer shall take into account all facts and circumstances surrounding this case in making decisions as to litigation tactics. In the event a dispute arises, in this regard, the Client and Lawyer shall not make arbitrary decisions, but shall make decisions based on all facts reasonably available. In the event any dispute can not be resolved between Lawyer and Client, the dispute will be resolved by Russell Peavyhouse after joint consultation with the Client and the Lawyer and Russell Peavyhouse's decision as an arbitrator will be binding on both the Client and the Lawyer. This provision includes all manner of things that could be in dispute, including but not limited to, pleadings, discovery, settlement, trial tactics and all other things related to the representation of the Client by the Lawyer.
The trial court approved the representation agreement between Mr. Massey and his new lawyers on March 29, 1996.
Settlement negotiations ensued between Mr. David and the defendants in the underlying litigation then pending. Mr. Peavyhouse also participated in these negotiations. When a dispute arose between Messrs. Massey and David about a possible settlement, Mr. David submitted the dispute to Mr. Peavyhouse as an arbitrator, albeit without following the requirements for binding arbitration set out in Chapter 682, Florida Statutes (1995). Mr. *230 Peavyhouse decided on August 30, 1996, that Mr. Massey had to accept the settlement.
On September 3, 1996, contrary to Mr. Massey's wishes, Mr. David filed a motion to approve settlement[3] with the trial court. Aware of the conflict of interest, he appeared as attorney for Mr. Massey at a hearing on the motion. Instead of advocating Mr. Massey's position, Mr. David represented his own interests and those of Ruden McClosky, and did so without informing Mr. Massey that he should obtain independent counsel. At the hearing, the trial court orally granted the motion to enforce settlement, and directed Mr. Massey to sign a general release, indicating that, if Mr. Massey refused to follow the court's directions, it would enter a written order.
On September 9, 1996, Mr. Massey discharged Mr. David and Ruden McClosky. On September 11, 1996, nevertheless, Mr. David mailed Mr. Massey a copy of a general release, with a cover letter directing him to sign the release, but Mr. Massey refused to execute the release. Mr. David then renewed the motion to approve settlement, which the trial court granted on September 16, 1996. As contemplated by the order entered on September 16, 1996,[4] Mr. Peavyhouse executed a release on October 18, 1996.

III.
On October 23, 1996, Ruden McClosky filed a notice of charging lien in the toxic tort proceeding.[5] Mr. David signed the notice as attorney for Ruden McClosky, but was not named as a party to the charging lien. On October 25, 1996, Ruden McClosky filed a motion to enforce charging lien. Again, although Mr. David signed the motion as attorney for Ruden McClosky, he was not named as a party. Mr. David signed other documents as attorney for Ruden McClosky in the course of the charging lien proceedings, but never as a party. (Under the terms of the agreement between Mr. David and Ruden McClosky, fees "generated" by Mr. David were the property of Ruden McClosky.)
On April 30, 1997, the trial court entered an order denying Mr. Massey's motion for *231 rehearing[6] and granting the law firms' motions to enforce charging lien. The court found that Ruden McClosky's contract with Mr. Massey was valid, that he terminated the representation without cause, and that both law firms were entitled to attorney's fees. From settlement proceeds of $795,000.00, the order awarded fees and costs to Ruden McClosky in the amount of $188,025.51 and fees and costs in the amount of $420,396.75 to Merkle & Magri, P.A.
After denying a motion for rehearing addressed to the April 30, 1997 order on May 8, 1997, the trial court entered a final judgment on the charging lien in favor of Ruden McClosky in the aggregate amount of $193,824.59[7] and a final judgment on the charging lien in favor of Merkle & Magri, P.A., for $420,396.75, on June 2, 1997. On June 3, 1997, the trial court entered a final judgment in the main suit directing Mr. Massey to accept the settlement.[8] On December 3, 1997, the trial court entered an order distributing fees and costs in the amounts listed in the final judgments of June 2, 1997.[9]

IV.
In the present case, originally unable to perfect service on Mr. David (despite several 120-day extensions), Mr. Massey took steps to serve him by publication. In response, on November 5, 1999, Ruden McClosky filed a motion to quash service by publication on Mr. David. The trial court denied this motion on December 8, 1999, on grounds that Ruden McClosky "did not represent Defendant David at the time of the hearing."
Mr. David then made a limited appearance for the purpose of contesting service, filing a motion to quash service on grounds that constructive service by publication "is not available in in personam actions." On February 4, 2000, the trial court granted Mr. David's motion and quashed the attempted service by publication.
On June 14, 2000, Mr. Massey filed a motion for leave to file a second amended *232 complaint in order to add allegations that would permit service of Mr. David under sections 48.181(1) and 48.193, Florida Statutes (2000), viz., that Mr. David conducted wrongful acts in relation to business conducted in Florida, that he had become a non-resident of Florida, and that he was concealing his whereabouts. The motion also sought an order directing the clerk to issue an alias summons. On June 29, 2001, after the trial court had granted summary judgment for Ruden McClosky on the amended complaint, the trial court entered an order granting Mr. Massey leave to file the second amended complaint. The order also directed the clerk to issue an alias summons for Mr. David.
On July 18, 2001, almost a month after entry of summary judgment for Ruden McClosky on the amended complaint,[10] Mr. Massey filed an affidavit of compliance indicating that he had met the requirements for service under section 48.181(1). Following service pursuant to section 48.181(1), Mr. David answered the second amended complaint on August 29, 2001 (over two months after entry of summary judgment for Ruden McClosky).

V.
In order for res judicata or collateral estoppel (also known as estoppel by judgment) to apply,[11] Florida requires "mutuality" and "identity of parties." See E.C. v. Katz, 731 So.2d 1268, 1269-70 (Fla. 1999). Identity of parties and mutuality do not exist unless the same parties or their privies participated in prior litigation that eventuated in a judgment by which they are mutually bound. See Gentile v. Bauder, 718 So.2d 781, 783 (Fla.1998); The Florida Bar v. Clement, 662 So.2d 690, 697-98 (Fla.1995); Stogniew v. McQueen, 656 So.2d 917, 919 (Fla.1995) ("[U]nless both parties are bound by the prior judgment, neither may use it in a subsequent action.").
Even if not named as a party, a party may be deemed a participant in prior litigation for purposes of res judicata or collateral estoppel, but only if the party is bound by the final judgment entered to the same extent as the named parties.
For one to be in privity with one who is a party to a lawsuit or for one to have been virtually represented by one who is a party to a lawsuit, one must have an interest in the action such that she will be bound by the final judgment as if she were a party. Southeastern Fidelity Ins. Co. v. Rice, 515 So.2d 240 (Fla. 4th DCA 1987) ("One not a party to a suit is in privity with one who is where his interest in the action was such that he will be bound by the final judgment as if he were a party."); Aerojet-General Corp. v. Askew, 511 F.2d 710, 719 (5th Cir.), cert. denied, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975) ("A person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative."). *233 Stogniew, 656 So.2d at 920; see Gentile, 718 So.2d at 783 ("To be in privity with one who is a party to a lawsuit, one must have an interest in the action such that she will be bound by the final judgment as if she were a party."); Southeastern Fidelity Ins. Co. v. Rice, 515 So.2d 240, 242 (Fla. 4th DCA 1987).
Virtual representation or privity may exist where a third party must indemnify and so is vicariously liable[12] for the acts of the party to the lawsuit. See Atria v. Hodor, 790 So.2d 1229, 1230 (Fla. 4th DCA 2001); Sentry Ins. v. FCCI Mut. Life Ins. Co., 745 So.2d 349, 350 (Fla. 4th DCA 1999); see also Restatement (Second) of Judgments, § 51(3) (1982) ("If the action is brought against the primary obligor and judgment is against the injured person, it extinguishes the claim against the person vicariously responsible if under applicable law the latter is an indemnitor whose liability arises only when the primary obligor is found liable to the injured person."). The mutuality requirement (of privity, virtual representation or identity) "is a general rule that applies to [the] ... defensive use," no less than to the offensive use, of res judicata or collateral estoppel. E.C., 731 So.2d at 1270.

A.
Mr. David was not a party at the time summary judgment was entered in favor of Ruden McClosky. By his own assiduous efforts, he ensured that he would not be bound by the result of the litigation between Mr. Massey and Ruden McClosky. Because he was not bound (and could not be bound) by the result of litigation to which he was not (then) a party, he cannot set up the summary judgment in favor of Ruden McClosky as res judicata or collateral estoppel as to claims against him. See E.C., 731 So.2d at 1270; Stogniew, 656 So.2d at 919.
Mr. David had not been served at the time the trial court entered summary judgment on behalf of Ruden McClosky, and had successfully quashed attempted service against him. This conduct is inconsistent with his later assertion that he was willing to allow Ruden McClosky "virtually" to represent him in the proceeding.
If Mr. Massey had prevailed against Ruden McClosky before Mr. David became a party, judgment would have been entered against Ruden McClosky, not Mr. David. See Street v. Crosthwait, 134 Fla. 158, 183 So. 820, 823 (1938) ("Where a court has jurisdiction of the subject matter and some of the parties, the adjudication may be binding on the parties over whom the court has jurisdiction by the proper service of process or by appearance and the same is not binding as to other persons over whom the court has not acquired jurisdiction."); Torrey v. Bruner, 60 Fla. 365, 53 So. 337, 338 (1910); Foster v. Thomas, 112 So.2d 33, 35 (Fla. 1st DCA 1959). The trial court did not obtain jurisdiction over Mr. David until he was properly served by publication. See HCA Health Servs. v. Ratican, 475 So.2d 981, 982 (Fla. 3d DCA 1985) ("An order is not binding upon an entity which has not been made a party to the proceedings."); Kingswood Builders, *234 Inc. v. Wall Plumbing & Heating Co., 287 So.2d 352, 352 (Fla. 4th DCA 1973).

B.
Close examination of the record reveals that Mr. David was not a party to the charging lien proceeding, either. Although he signed documents and defended his own conduct as Mr. Massey's lawyer, he did so as counsel for Ruden McClosky. See Olmsted v. Emmanuel, 783 So.2d 1122, 1126 (Fla. 1st DCA 2001). Representing Ruden McClosky as its attorney did not make him a party to the proceeding. Nothing filed in the charging lien proceeding supports the view that Mr. David was participating as a party rather than as Ruden McClosky's lawyer. He was not bound by the judgment entered in the charging lien proceeding on June 2, 1996.
Nor does this record establish that Mr. David was "virtually represented" by or in privity with Ruden McClosky in the charging lien proceeding. To the extent Mr. David was Ruden McClosky's agent while he represented Mr. Massey,[13] Ruden McClosky might be vicariously liable for his acts or omissions. See § 621.07, Fla. Stat. (1995). But no party contends that Mr. David is vicariously liable for Ruden McClosky's acts or omissions in representing Mr. Massey in the underlying toxic tort litigation.[14] In short, because he was not named as a party to or bound by the result of the charging lien proceeding, Mr. David cannot be said even to have been a "virtual" party to that proceeding. See Stogniew, 656 So.2d at 920.

VI.
Because the record does not conclusively establish that Mr. David would have been bound by an adverse result either earlier in the present proceeding or in the antecedent charging lien proceeding, (or otherwise conclusively establish the requisite "mutuality"), the trial court erred in granting summary judgment on the basis of res judicata and collateral estoppel. Accordingly, we reverse the final summary judgment entered in favor of Mr. David and remand the case for further proceedings consistent with this opinion.
Reversed and remanded.
MINER and LEWIS, JJ., CONCUR.
NOTES
[1] Attached to the memorandum, were letters from Ruden McClosky to Mr. David outlining his agreement with and relationship to the law firm:

You will be considered an "of counsel" to this Firm on an exclusive basis and, as such, treated as an independent contractor. You will have no other employment or independent contractor relationships with other law firms without our knowledge and consent. You agree to comply with all Firm policies that relate to attorneys who are of counsel to the Firm except where a policy conflicts with this Agreement. You will not be covered by any insurance or other employee benefits made available, from time to time, by the Firm. To the extent compensation is paid to you in any fiscal year, the Firm will provide you with an IRS Form 1099 setting forth the amount for tax purposes.
This same letter provided that fees generated by Mr. David would be the property of Ruden McClosky, and specified percentages of fees he generated as his remuneration.
[2] For purposes of deciding the appeal, we take as true the plaintiff's allegations well pleaded below. In granting summary judgment, the trial court limited its analysis to whether relief was precluded on the basis of res judicata and collateral estoppel.
[3] The motion read in relevant part as follows:

1. The undersigned entered into a Contingent Fee Contract with Modification To Contract Between The Client and The Lawyer....
2. The Court approved the contract of employment including the modification to the contract between the client and the lawyer....
3. A dispute arose between the client and the lawyer with regard to the propriety of accepting a settlement ... in the amount of $795,000.00
4. Pursuant to the contract of employment, the dispute was submitted to the arbitrator, Attorney Russell K. Peavyhouse, who has resolved the dispute in favor of accepting the settlement referred to above....
WHEREFORE, the undersigned requests the Court to approve the settlement, require the Plaintiff, GARY MASSEY to execute a general release or in the alternative to appoint a guardian ad litem for the purposes of executing a general release, and to dismiss....
[4] The decretal portion of the order reads, in part:

1. The settlement is hereby approved.
2. The Plaintiff, Gary Massey, is ordered to execute a general release after approval as to form by his attorney. In the event a general release is not executed by Mr. Massey within five (5) days of receipt of same, Russell Peavyhouse is hereby appointed Guardian Ad Litem for the purposes of approving the settlement on behalf of Mr. Massey and executing the general release on his behalf.
[5] Merkle & Magri, P.A., also filed a notice of and motion to enforce charging lien and participated in the charging lien proceedings.
[6] On or after September 10, 1996, Mr. Massey filed a pro se motion for rehearing alleging that Mr. Massey was not informed in writing of the amount of the settlement, that the settlement was made in bad faith, that the contract of representation between Mr. Massey and Mr. David was not legally binding, that Mr. Massey was not informed at the time he signed the contract that he was giving up the right to reject a settlement, that the contract was signed under duress because Mr. Massey was under a time constraint to hire an attorney, that the settlement was unreasonable, and that Mr. Massey had been denied his day in court.
[7] On appeal, a scrivener's error was corrected, reducing attorney's fees and bringing the aggregate amount down to $188,025.51 consistent with the order entered on April 30, 1997. See Massey v. Beazer East, Inc., 712 So.2d 1265, 1265 (Fla. 1st DCA 1998).
[8] Mr. Massey appealed the judgments entered on June 2 and 3, 1997. On November 21, 1997, this Court entered an order limiting the issues on appeal to the final judgments enforcing the charging liens. In his initial brief, Mr. Massey asserted that the charging lien was unenforceable because the agreement to arbitrate was unenforceable, the arbitrator acted contrary to the arbitration code, Mr. David represented the settlement to the court in a manner that constituted a fraud, the trial court did not have jurisdiction to appoint Mr. Peavyhouse as guardian ad litem, and that Mr. Massey had discharged Mr. David on the basis of fraud and deception. On July 20, 1998, this Court affirmed the final judgment entered on behalf of Ruden McClosky, after correcting a scrivener's error. See Massey, 712 So.2d at 1265.
[9] Mr. Massey unsuccessfully appealed the December 3, 1997 order, basically on the same grounds raised in the appeal from the judgments entered June 2 and 3, 1997. See Massey v. Beazer East, Inc., 737 So.2d 1082 (Fla. 1st DCA 1999) (Table).
[10] The trial court, on June 21, 2000, granted summary judgment for Ruden McClosky under theories of res judicata and collateral estoppel. The court found the issues raised by the amended complaint had already been raised and adjudicated in the charging lien proceeding. The court concluded that res judicata applied because the parties were identical, and the causes of action were identical. The court further concluded that collateral estoppel applied because the issues and parties were identical. We affirmed this summary judgment. See Massey v. Ruden, McClosky, Smith, Schuster & Russell, P.A., 788 So.2d 967 (Fla. 1st DCA 2001) (Table).
[11] The narrow exception identified in Zeidwig v. Ward, 548 So.2d 209 (Fla.1989), is not pertinent here.
[12] An insurer may be a virtual party to a lawsuit involving its insured where their interests coincide. Compare Jones v. Bradley, 366 So.2d 1266, 1267-68 (Fla. 4th DCA 1979), with Progressive Am. Ins. Co. v. McKinnie, 513 So.2d 748, 749 (Fla. 4th DCA 1987). In such cases, a judgment in favor of the insured may redound to the insurer's benefit, even though the insurer was not a named party. See also Smith v. Urquhart, 129 Fla. 742, 176 So. 787, 788-89 (1937) ("`Where an estoppel is operative as between the original parties to the transaction, it is also effective as to their privies in contract.' Marion Mortgage Co. v. Grennan, 106 Fla. 913, 143 So. 761, 765, 87 A.L.R. 1492.").
[13] The agreement between Mr. David and Ruden McClosky describes Mr. David as an independent contractor rather than as an employee. In their answers, both Ruden McClosky and Mr. David separately denied being vicariously liable for the acts of the other. See Restatement (Second) of Judgments, § 51 (1982). On this record, a fact issue exists as to Ruden McClosky's vicarious liability for Mr. David's conduct.
[14] As far as the record reveals, Mr. David had not agreed to indemnify Ruden McClosky for his wrongful acts. Absent such an agreement, Mr. Massey would not have been barred from seeking relief from Mr. David in another proceeding, even if Ruden McClosky had settled with Mr. Massey in the charging lien proceeding and consented to entry of judgment. See JFK Med. Ctr. v. Price, 647 So.2d 833, 833-34 (Fla.1994); Hatcher v. Dixon, 660 So.2d 1105, 1109 (Fla. 1st DCA 1995); see also Restatement (Second) of Judgments, § 51(4) (1982) ("A judgment by consent for or against the injured person does not extinguish his claim against the person not sued in the first action....").