695 So.2d 836 (1997)
Derek DAVIS, Appellant,
v.
STATE of Florida, Appellee.
No. 95-03862.
District Court of Appeal of Florida, Second District.
June 18, 1997.
James Marion Moorman, Public Defender, and Frank D.L. Winstead, Assistant Public Defender, Bartow, for Appellant.
*837 Robert A. Butterworth, Attorney General, Tallahassee, and Deborah F. Hogge, Assistant Attorney General, Tampa, for Appellee.
PER CURIAM.
Derek Davis appeals the denial of his motion to suppress evidence seized after the stop and search of his vehicle. Because there was insufficient evidence to show a founded suspicion for the stop, we reverse.
While on routine patrol at approximately 10 p.m., a deputy observed Davis's vehicle backed into a wooded area next to a shopping mall. The deputy had not received any calls regarding any crime being committed in the area. He testified that he pulled into the shopping center to "conduct a traffic stop to determine his (Davis's) presence for being there." When the deputy pulled into the shopping center, Davis's vehicle started pulling out of the woods attempting to leave.
The deputy testified that he stopped the vehicle based upon how the vehicle was located, the area in which it was located, the time of night, the fact that the businesses were closed, and past problems in the same vicinity. The deputy testified that Davis was not free to leave and was being detained until the deputy completed a driver's license check.
In response to the deputy's questions, Davis said that he was waiting for someone and they were going to a barbecue. While the computer check on the license was being performed, another man approached and got into the passenger side of the vehicle. When the license checked out clear, the deputy returned to the vehicle and gave Davis back his license. Davis began reaching under the seat, as he had done once before, and the deputy asked whether there were any weapons or narcotics in the car and whether he could search the car. At the suppression hearing, the deputy testified that he did not tell Davis that a narcotics dog would be brought to the car if Davis did not allow the search. However, in his deposition he acknowledged that he did.
The passenger in the vehicle then left the car, and the deputy detained him about twenty feet away. Meanwhile, Davis left the vehicle and went into the woods, where he was then apprehended by the deputy. Cocaine and a gun were found in the woods, and cocaine was found in the car. Davis was charged with possession of cocaine and possession of a concealed firearm. After the trial court denied Davis's motion to suppress this evidence, Davis pleaded nolo contendere, reserving the right to appeal the denial of his motion to suppress.
On appeal Davis first argues that the officer did not have a founded suspicion to stop his vehicle when it began to leave its parked position. We agree. An investigatory stop must be based on founded or reasonable suspicion that the vehicle's occupants committed, are committing or are about to commit a crime. See Popple v. State, 626 So.2d 185 (Fla.1993). Here, the officer did not have the founded suspicion necessary to authorize a stop of the vehicle.
This case is somewhat similar to McCloud v. State, 491 So.2d 1164 (Fla. 2d DCA 1986), where police observed a car backed up to a boarded-up building in a high crime area at 1:20 a.m. near a "No Trespassing" sign. As the officer approached, McCloud turned on the engine and began to drive away. This court concluded that these facts did not support a founded suspicion of criminal activity.
The state cites the first-degree murder case of Lightbourne v. State, 438 So.2d 380 (Fla.1983), which held that it was not a stop or seizure when the officer in that case approached the defendant in his parked car, asked him a few simple questions as to his reason for being there, and ran a check on his driver's license. Lightbourne is distinguishable because in that case a citizen had called the police about a suspicious car in the neighborhood and the defendant had not begun to drive away. The other cases cited to us by the state to support its argument that this was a citizen encounter and not an investigatory stop did not involve the stop of a vehicle.
The remaining issues raised on appeal are rendered moot by our reversal of the trial court's denial of the motion to suppress.
Accordingly, we reverse the trial court's order denying the motion to suppress and *838 remand with directions to vacate Davis's convictions.
FULMER and QUINCE, JJ., concur.
ALTENBERND, A.C.J., concurs specially.
ALTENBERND, Acting Chief Judge, concurring.
I reluctantly agree that this panel must reverse Mr. Davis's convictions in light of McCloud v. State, 491 So.2d 1164 (Fla. 2d DCA 1986). From my perspective, the facts in McCloud, and in this case, should give an officer reasonable suspicion to conduct a brief Terry[1] stop.
From the detailed recitation of the facts in McCloud, I am inclined to believe that the stop in that case was valid because the officers initially had reasonable suspicion to believe Mr. McCloud was loitering. See § 856.021, Fla. Stat. (1995). If the officers' investigation "dispel[led] any alarm or immediate concern," § 856.021(2), before the concealed firearm was discovered, then the stop continued beyond the scope permitted to investigate a reasonable suspicion of loitering. In that event, the result reached in McCloud may be correct.
In this case, the trial judge had an opportunity to review photographs of the scene of the stop, which are not in our record. An experienced police officer, who was familiar with the neighborhood, observed a car parked late at night in a wooded area adjacent to a small, closed shopping center. He had not noticed the car a few hours earlier. The car was not parked in the strip mall's parking lot, but rather had been backed into the adjacent woods. A burglary of the shopping center could easily have been in progress. The officer could have approached the vehicle for a lawful citizens' encounter, but the vehicle began to leave as he approached.
The fact that a person takes flight upon the approach of a law enforcement officer is a statutory factor supporting an investigatory stop for loitering. § 856.021(2). I would hold that a brief stop is authorized under these circumstances. I realize that the police can abuse their discretion to investigate potential loitering violations, but any reasonable citizen should understand a police officer's decision to check on his or her actions briefly when that conduct is consistent with loitering.
Whether this stop extended for a longer period than that permitted for a Terry stop is a very close question. Because of the activities of the passenger, I do not think that the officer's valid concerns had been dispelled before Davis went into the woods and abandoned the cocaine. If it were not for McCloud, I would defer to the experienced trial judge's assessment that the stop was permissible, and affirm this close case.
NOTES
[1] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).