900 So.2d 761 (2005)
Alvaro ALVAREZ, et al., Appellants,
v.
CITY OF HIALEAH, Appellee.
No. 3D04-1797.
District Court of Appeal of Florida, Third District.
May 4, 2005.
*763 Jason M. Wandner, for appellants.
Rafael E. Granado, Coral Gables, for appellee.
Before COPE, GREEN, and WELLS, JJ.
GREEN, J.
Alvaro Alvarez and his live-in girlfriend, Odalys Vargas (collectively "claimants"), appeal a non-final order entered after an adversarial preliminary hearing finding probable cause for the seizure of $21,350.00 in U.S. currency from Alvarez's vehicle pursuant to a stop. The claimants argue, among other things, that the City of Hialeah ("City"), as the seizing agency, could not establish probable cause that this money was used in violation of Florida's Contraband Forfeiture Act[1] because the initial stop of the vehicle was unlawful. We agree and reverse.
At the adversarial preliminary hearing, Lieutenant Humberto Valdes of the Hialeah Police Department was called to testify on behalf of the City. He stated that at about noon, on the date in question, he was involved in a stakeout of a warehouse area *764 in Hialeah. That stakeout was unrelated to this case. Lt. Valdes was situated in a residential area comprised of a row of townhomes directly behind the warehouse district. While parked in this area, Lt. Valdes observed two men in a covered pick-up truck pull into the driveway of one of the townhomes. There were no vehicles parked in the driveway and it did not appear that anyone was home. The home had visible iron security bars on its front door and windows.
Claimant Alvarez was the driver of the truck. He and his passenger, later identified as Juan Gonzalez, got out of the truck. Lt. Valdes observed them "standing around the front of the house looking around." Lt. Valdes did not see them attempt to open or knock on the door. Lt. Valdes further testified that the two men momentarily walked to the side of the house and "loitered" for a short time. They eventually returned to the front of the house, got back into the truck and drove away. Lt. Valdes estimated that the two men were at the home for approximately two minutes.
Based upon his twenty years in law enforcement, Lt. Valdes testified that he believed that the two men were "casing" this home to burglarize it. He decided to investigate further. He followed the pick-up truck for approximately three blocks. Although he did not observe the driver of the truck commit any traffic infractions or other violations of law, Lt. Valdes testified that he decided to conduct a "traffic stop" to determine whether the two men were burglars "casing out" the home. Police backup was called to the scene.
During the stop, the two men were ordered out of the vehicle, separated and questioned. They gave conflicting accounts about why they had gone to the home. Alvarez stated that he was there to meet a friend. His passenger, Gonzalez, however, said that they were just cruising through the area. The police requested and received Alvarez's written permission to search the truck. The search revealed $21,350.00 under the front seat.
The money was wrapped with rubber bands and stacked in bundles of various denominations. Lt. Valdes testified that this was typical of how drug dealers carry their money. Lt. Valdes also found a spiral notebook in the glove compartment of the truck. He believed, based on his training and experience, that the notebook contained a record of numerous drug transactions. Lt. Valdes requested that a narcotics dog be brought to the scene. Although no drugs were found, the dog alerted to both the money and vehicle. The police then confiscated the money and notebook on the theory that they were tied to drug transactions. No criminal charges were filed against the men.
The City of Hialeah commenced forfeiture proceedings against the currency. Claimants requested an adversarial preliminary hearing. The claimants moved to suppress the evidence and the currency arguing that the stop of the pickup and confiscation of the currency was an illegal search and seizure. They argued that the police lacked reasonable suspicion based on articulable facts to believe that the two men in the truck had committed, were committing, or were about to commit a crime. As a result, the stop of this vehicle violated both of the Fourth Amendment as applied to the states under the Fourteenth Amendment to the U.S. Constitution, and Florida's Stop and Frisk Law.[2] Thus, they maintain that the City could not rely upon the seized evidence to establish probable *765 cause at the adversarial preliminary hearing.
The trial court found that the City had sustained its burden of demonstrating that the police had lawfully stopped the truck based upon a reasonable founded suspicion. The court therefore denied the claimant's request to exclude the evidence uncovered as a result of the stop and went on to find that there was probable cause to believe that the currency was used in, or represented the proceeds of, a criminal enterprise in violation of Florida's Contraband Forfeiture Act. The claimants were ordered to file and serve their responsive pleadings and affirmative defenses to the complaint for Final Judgment of Forfeiture.
The claimants timely filed this appeal. They argue, and we agree, that the trial court erred in its determination that the initial stop and detention of the truck by the police was valid based on a reasonable suspicion that its occupants had committed, were committing, or were about to commit a crime.
Our standard of review of an order finding probable cause after an adversarial preliminary hearing, under the Florida Contraband Forfeiture Act, is de novo. See § 932.701, Fla. Stat. (2004); City of Coral Springs v. Forfeiture of 1997 Ford Ranger, 803 So.2d 847 (Fla. 4th DCA 2002); Dept. Highway Safety & Motor Vehicles v. Jones, 780 So.2d 949 (Fla. 4th DCA 2001). At the adversarial preliminary hearing, the City, as the seizing agency, carried the initial burden of proving that there was probable cause to believe that there was a nexus between the seized currency and elicit drug activities. See § 932.703(2)(a), Fla. Stat. (2004); In re Forfeiture of $171,900, 711 So.2d 1269 (Fla. 3d DCA 1998) (the inquiry is whether there is sufficient probability to warrant a reasonable belief that the currency was connected to criminal activity); Lobo v. Metro-Dade Police Dept., 505 So.2d 621, 623 (Fla. 3d DCA 1987) (probable cause "involves the question of whether the information relied upon by the state is adequate and sufficiently reliable to warrant the belief by a reasonable person that a violation has occurred.").
However, where the claimants raised a Fourth Amendment challenge to the stop of the vehicle, that issue must be addressed first and independently of the question of whether there is a nexus between the seized currency and unlawful drug activity. The law is clear that the exclusionary rule applies to forfeiture proceedings, and that evidence obtained in violation of the Fourth Amendment must be excluded at a hearing to determine whether the government has probable cause for the forfeiture. See One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965) (exclusionary rule applicable to forfeiture proceedings); Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886) (evidence obtained in violation of Fourth Amendment cannot be relied upon to uphold civil forfeiture); McLane v. Rose, 537 So.2d 652 (Fla. 2d DCA 1989) (same); In re Approximately $48,900 in U.S. Currency, 432 So.2d 1382, 1385 (Fla. 4th DCA 1983) ("[T]he governmental entity seeking forfeiture must establish probable cause for violation of the forfeiture act without benefit of evidence obtained in violation of the Fourth and Fourteenth Amendments").[3] Therefore, prior to making *766 a determination of whether there is a nexus between the currency and elicit drug activities, the trial court here had to address the legality of the stop of the vehicle. See Golon v. Jenne, 739 So.2d 659 (Fla. 4th DCA 1999); Indialantic Police Dep't. v. Zimmerman, 677 So.2d 1307 (Fla. 5th DCA 1996).
Based upon our de novo review of the evidence adduced at the adversarial preliminary hearing below, we disagree with the trial court's determination that the police acted with reasonable suspicion to conduct an investigatory stop and detention pursuant to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Initially, we note that the Fourth District in Golon and the Fifth District in Indialantic Police Dept. have suggested that where a Fourth Amendment challenge to a stop is raised in an adversarial preliminary hearing in a forfeiture proceeding, the appropriate standard for determining the validity of the stop is whether there was probable cause. See Golon, 739 So.2d at 660-61; Indialantic Police Dept., 677 So.2d at 1309.
We respectfully disagree with our sister courts.[4] Such stops, like the stop of Alvarez's vehicle here, are investigative detentions subject to Fourth Amendment scrutiny. § 901.151, Fla. Stat. (2004); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). We conclude that the proper inquiry to determine the validity of these stops, even in the context of a forfeiture proceeding, is whether the government had reasonable suspicion to support the stop. See U.S. v. $99,990.00 in U.S. Currency, 2003 WL 21698849 (6th Cir. 2003); U.S. v. $404,905.00 in U.S. Currency, 182 F.3d 643 (8th Cir.1999); U.S. v. $321,470.00 U.S. Currency, 874 F.2d 298 (5th Cir.1989); U.S. v. One 1993 Ford F150 Pickup, 148 F.Supp.2d 1258 (M.D.Ala.2001); U.S. v. $57,443, 42 F.Supp.2d 1293 (S.D.Fla.1999); U.S. v. $46,000 in U.S. Currency, 2003 WL 21659180 (E.D.Pa.2003). See also In re Forfeiture of $61,300.00 in U.S. Currency, 576 So.2d 424 (Fla. 4th DCA 1991)(stop of vehicle for speeding, challenged in civil forfeiture action, was lawful as based on founded suspicion); McLane v. Rose, 537 So.2d 652 (Fla. 2d DCA 1989)(legality of detention challenged in civil forfeiture action must be supported by reasonable suspicion); In re Forfeiture of 1981 Ford Automobile, 520 So.2d 631 (Fla. 4th DCA 1988)(stop challenged in civil forfeiture, based on anonymous tip and surrounding circumstances, was supported by reasonable suspicion); Dept. of Highway Safety & Motor Vehicles v. Coleman, 505 So.2d 668 (Fla. 5th DCA 1987)(stop challenged in civil forfeiture proceeding not legal, because patrolman's observation of vehicle driving on highway was not supported by reasonable suspicion).
Under Terry, a police officer may constitutionally conduct a limited investigatory stop or detention on less than probable cause if the officer has reasonable suspicion that an individual has engaged in criminal activity. Id. In order to justify the stop, the officer "must be able to point to specific and articulable facts *767 which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21, 88 S.Ct. 1868; see Popple v. State, 626 So.2d 185 (Fla. 1993). The standards enunciated in Terry have now been codified into Florida's Stop and Frisk Law. § 901.151(2), Florida Statutes (2004). That statute provides, in pertinent part:
Whenever any law enforcement officer of this state encounters any person under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state or the criminal ordinances of any municipality or county, the officer may temporarily detain such person for the purpose of ascertaining the identity of the person temporarily detained and the circumstances surrounding the person's presence abroad which led the officer to believe that the person had committed, was committing, or was about to commit a criminal offense.
Thus, before an officer may "detain" an individual, the officer must have a well-founded suspicion that the individual has committed, is committing, or is about to commit a violation of the criminal laws of this state or the criminal ordinances of any municipality or county. See McLane v. Rose, 537 So.2d 652, 654 (Fla. 2d DCA 1989). In determining whether there is a founded suspicion of criminal activity, to justify an investigatory stop, the City correctly points out that the totality of the circumstances, as viewed by an experienced police officer, must be taken into account. See Moore v. State, 561 So.2d 625, 626 (Fla. 1st DCA 1990). Some factors for the court's consideration are the time of day, day of the week, location, physical appearance and behavior of the suspect, the appearance and manner of operation of any vehicle involved or anything incongruous or unusual in the situation as interpreted in the light of the officer's knowledge. See State v. Russell, 659 So.2d 465, 467 (Fla. 3d DCA 1995); Grant v. State, 718 So.2d 238, 239 (Fla. 2d DCA 1998).
In this case, we conclude that notwithstanding Lt. Valdes's extensive experience in law enforcement, there was nothing unusual or untoward about what he observed to create a reasonable or founded suspicion that the two men had committed, were committing, or were about to commit a crime. The sum total of the officer's observations was that two men in a truck, in the middle of the day, pulled into the driveway of a townhome that had clearly visible iron security bars on its door and windows. Within the time frame of two minutes, the men got out of their truck with nothing in their hands, looked around the front of the house, walked to the side of the house, returned to their truck, and drove away. This, without more, does not create a reasonable or founded suspicion of criminal activity to justify a stop of this truck. See, e.g., Rinehart v. State, 778 So.2d 331 (Fla. 2d DCA 2000)(no founded suspicion of loitering where police observe persons enter a parked car next to apartment building; no crime committed where there is no imminent threat to persons or property); Jaudon v. State, 749 So.2d 548 (Fla. 2d DCA 2000)(no reasonable suspicion of loitering where police see defendant drive back and forth several times and run through hole in fence toward apartments; police articulated no facts to justify immediate concern for safety of persons or property); E.C. v. State, 724 So.2d 1243 (Fla. 4th DCA 1999)(error to deny judgment of acquittal motion where police observe juvenile walk back and forth in front of strip mall many times and back and froth toward adjacent convenience store; no imminent threat to safety of *768 persons or property); In re B.M., 553 So.2d 714 (Fla. 4th DCA 1989)(error to deny suppression motion of evidence seized upon arrest of juvenile in car parked in front of closed grocery store; no facts supported founded suspicion of loitering). See also Chamson v. State, 529 So.2d 1160 (Fla. 3d DCA 1988)(loitering arrest unlawful where police do not observe any behavior that threatens public safety); Carter v. State, 516 So.2d 312 (Fla. 3d DCA 1987)(error to deny suppression motion upon loitering arrest where only behavior police observe is defendant riding bike with bag on the road); V.S. v. State, 446 So.2d 232 (Fla. 3d DCA 1984)(loitering arrest of juvenile waiting for friend on the street unlawful as behavior insufficient to constitute loitering). At best, the stop was based upon a hunch, or a feeling, by the officer. Therefore, the stop was illegal.[5]See Rinehart v. State, 778 So.2d 331 (Fla. 2d DCA 2000); E.C. v. State, 724 So.2d 1243 (Fla. 4th DCA 1999); Davis v. State, 695 So.2d 836 (Fla. 2d DCA 1997); In re: B.M., 553 So.2d 714 (Fla. 4th DCA 1990).
Having concluded that the initial stop of the claimant's pickup was unlawful, we must nevertheless further determine whether the consensual search of the truck, which produced the currency, was similarly unlawful. That is because one of the established exceptions to a warrantless search is a search conducted pursuant to consent. See Norman v. State, 379 So.2d 643, 646 (Fla.1980)(citing Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). In Florida, the state has the burden of showing, by clear and convincing evidence, that the defendant freely and voluntarily consented to the search. Id. Where, as here, consent is obtained after illegal police activity, the unlawful police action presumptively taints and renders involuntary any consent to search. Id. at 647; State v. Butler, 520 So.2d 325, 326 (Fla. 3d DCA 1988). "The consent will be held voluntary only if there is clear and convincing proof of an unequivocal break in the chain of illegality sufficient to dissipate the taint of prior official illegal action." Norman, 379 So.2d at 647.
We conclude that the City failed to prove by clear and convincing evidence that the claimant's consent to search the pickup was not the product of the illegal stop. See Norman; Butler. After the pickup was stopped, Alvarez and his passenger were ordered out of the truck and separated for questioning by police dressed like S.W.A.T. members. Although they were not formally arrested, they were de facto detained and not free to leave. It was within this context that the police immediately obtained Alvarez's consent to search the truck. Given this setting, we do not believe that there was an unequivocal break in the chain of illegality between the stop and the search sufficient to dissipate the taint of the unlawful stop of the vehicle. See Norman, 379 So.2d at 647. Thus, the court should have granted the claimants' motion and the evidence seized from the truck should have been excluded from the court's probable cause determination.
*769 In the absence of this evidence, it is clear that the City cannot proceed with this forfeiture action as commendably conceded by counsel for the City on this appeal. We therefore reverse the order finding probable cause with directions that this cause be dismissed.
Reversed and remanded with directions.
WELLS, J., concurs.
COPE, J. (specially concurring).
I concur but would add two observations.
The first relates to the issue of consent after there has been an illegal stop. The break in the chain of illegality does not necessarily have to be accomplished by a break in time. This court has held that such a break can be accomplished if the defendant is advised that he need not consent to a search and after such advice, consent is voluntarily given. See State v. Gribeiro, 513 So.2d 1323, 1324 (Fla. 3d DCA 1987); see also Guy v. State, 891 So.2d 1193 (Fla. 3d DCA 2005). In this case the officer believed he had founded suspicion to make an investigative stop and consequently did not give Alvarez any advice that he had a right to refuse consent. Since we have concluded that the stop was invalid, and since there was no advice to Alvarez that he could refuse to consent, it follows that the seizure is no good.
Second, I entirely agree that the stop cannot be sustained on the theory that the officer observed a trespass. Although that issue was presented in the trial court, the City has not made any argument regarding trespass on this appeal. In my view, a trespass theory would not lie because the men in this case parked in the public parking space in front of the townhouse, approached the front door of the townhouse, and stayed in the public areas in front of the townhouse row during the time period relevant here. By custom and usage, there is an implied invitation for visitors to approach the front door of a residence, in the absence of some external indication to the contrary. See 55 Fla. Jur.2d Trespass § 9, at 311-12 (2000); § 810.09, Fla. Stat. (2004). That being so, I respectfully disagree with that part of footnote five which indicates that it would be relevant to know whether the owner had given the men permission to stop by the townhouse.
With these minor observations, I join the majority opinion.
NOTES
[1] See § 932.701-.707, Fla. Stat. (2004).
[2] See § 901.151, Fla. Stat. (2004).
[3] See also § 932.704(1), Fla. Stat. (2004) providing that:

. . . It is also the policy of this state that law enforcement agencies ensure that, in all seizures made under the Florida Contraband Forfeiture Act, their officers adhere to federal and state constitutional limitations regarding an individual's right to be free from unreasonable searches and seizures, including, but not limited to, the illegal use of stops based on a pretext, coercive-consent searches, or a search based solely upon an individual's race or ethnicity.
[4] Our disagreement as to the applicable standard does not affect the outcome of this decision, because if the stop was not founded upon reasonable suspicion, it clearly could not be founded upon the higher probable cause standard.
[5] At various points during the hearing the City seemed to be arguing that there was reasonable suspicion to support the stop because the men's behavior rose to the level of an attempted burglary or trespass. However, Lt. Valdes did not testify that he saw any attempt to enter the home, nor any other evidence of any intent to commit a burglary. See generally Jones v. State, 608 So.2d 797 (Fla.1992). Moreover, Lt. Valdes did not know whether the owner had given the men permission to stop by the townhouse, sufficient to support a trespass, see generally Baker v. State, 813 So.2d 1044 (Fla. 4th DCA 2002).