**Patrick K. BALL, Plaintiff,**

v.

**CITY OF CORAL GABLES et. al., Defendants.**

**Case No. 07–20949–CIV.**

United States District Court, S.D. Florida, Miami Division.

April 9, 2008.

Christopher Alfred Haddad, West Palm Beach, FL, for Plaintiff.

Oscar Edmund Marrero, Lourdes Espino Wydler, Law Offices of Oscar E. Marrero, Coral Gables, FL, for Edward Garcia and Daniel Smith.

Jennifer Lynn Cohen, Michael Fertig, Akerman Senterfitt, Miami, FL, for City of Coral Gables and Coral Gables Police Department.

### ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT

JOSE E. MARTINEZ, District Judge.

THIS CAUSE came before the Court upon Defendants City of Coral Gables' and the City of Coral Gables Police Department's Motion for Summary Judgment (D.E. No. 61) and Defendants', Edward Garcia and Daniel Smith, Motion for Summary Judgment (D.E. No. 63). Plaintiff Patrick K. Ball ("Plaintiff" or "Ball") has filed suit against Defendants the City of Coral Gables, the Coral Gables Police Department, Officer Edward Garcia, and Officer Daniel Smith, alleging violations of 42 U.S.C. § 1983 and state tort claims after he was arrested in the City of Miami by Coral Gables police officers who were operating outside of their jurisdiction. All Defendants have moved for summary judgment on all claims. After careful consideration, the Court grants Defendants' motions for summary judgment for the reasons set forth below.

### I. Relevant Factual and Procedural Background

On November 1, 2003, Defendant, Coral Gables Police Officer Edward Garcia ("Garcia" or "Officer Garcia"), was on patrol near the intersection of Red Road and Miller Road. After midnight, he was traveling southbound on Red Road when he observed a white 1992 Jeep Cherokee, also in the southbound lane, driven by Ball.[1]

Garcia observed Ball's vehicle repeatedly swerve in and out of its lane and suspected that the driver was under the influence of alcohol. Garcia performed an investigatory stop of Ball. After he observed several other details which indicated that Ball was intoxicated and after Ball's admission that he had been drinking, Garcia administered two roadside sobriety tests to Ball. Ball performed poorly on both tests, and Garcia arrested him for driving under the influence ("DUI") and issued him a citation for failing to maintain a single lane. It is undisputed that this arrest took place outside of Officer Garcia's jurisdiction.

Defendant, Coral Gables Police Officer Daniel Smith, arrived on the scene while Garcia was performing the sobriety tests. He also was present when Ball was arrested. He later transported Ball to the City of Coral Gables Police Department for processing and then to the Turner Guilford Knight Jail Facility. At trial, Ball was convicted of DUI but acquitted on the charge that he failed to maintain a single lane. However, the Circuit Court of the Eleventh Judicial Circuit in and for Miami–Dade County Florida, sitting as an appellate court, reversed Ball's conviction and found that both the stop and arrest of Ball were unlawful.

On April 10, 2007, Ball filed a six-count complaint against the City of Coral Gables, the Coral Gables Police Department, Don Slesnick, in his official capacity as Mayor of the City of Coral Gables, Michael Hammerschmidt, in his official capacity as Police Chief of the Coral Gables Police Department, Edward Garcia, individually and in his official capacity as a police officer for the City of Coral Gables and Daniel Smith, individually, and in his official capacity as police officer of the City of Coral Gables.

---

1. In the particular area where Garcia observed Ball, the southbound lane of Red Road is in the City of South Miami, and the northbound lane is in the City of Coral Gables.

In Counts I through IV, Ball alleged that his civil rights were violated pursuant to 42 U.S.C. § 1983. In Count I, Ball alleged a violation of section 1983 for false arrest against all Defendants. In Count II, Ball alleged a violation of section 1983 against Smith for failing to intervene in Ball's unlawful arrest. In Count III, Ball alleged a violation of section 1983 for false imprisonment against all Defendants, and in Count IV, Plaintiff alleged a violation of section 1983 for malicious prosecution against all Defendants. In Counts V and VI, Ball asserted state tort claims against all Defendants for false arrest/false imprisonment and malicious prosecution.

Defendants previously moved to dismiss all claims asserted against them. The motions to dismiss were granted in part and denied in part. *See* (D.E. No. 39). The motions were granted to the extent that Plaintiff asserted claims against the individual defendants, Don Slesnick, Michael Hammerschmidt, Edward Garcia, and Daniel Smith, in their official capacity. These claims were dismissed with prejudice as the Court found them to be redundant. In all other respects, however, the motions were denied. The Court now considers Defendants' motions for summary judgment.

## II. Legal Standard

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). By its very terms, this standard provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be no *genuine* issue of

*material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Matsushita Electric Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348. It is "material" if it might affect the outcome of the case under the governing law. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. In addition, in considering a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party. *Id.* at 255, 106 S.Ct. 2505.

If the moving party bears the burden of proof at trial, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment. *See United States v. Four Parcels of Real Prop. in Greene and Tuscaloosa Counties*, 941 F.2d 1428, 1438 (11th Cir.1991). The moving party " 'must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial.' " *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting)). "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.' " *Four Parcels of Real Prop. in Greene and Tuscaloosa Counties*, 941 F.2d at 1438 (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir.1991)). *See also* Fed.R.Civ.P. 56(e).

In contrast, if the non-moving party bears the burden of proof at trial, the

moving party may obtain summary judgment simply by establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim or affirmative defense. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. When the non-moving party bears the burden of proof, the moving party does not have to "support its motion with affidavits or other similar material *negating* the opponent's claim." *Id.* at 323, 106 S.Ct. 2548 (emphasis in original). The moving party may discharge its burden in this situation by showing the Court that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 324, 106 S.Ct. 2548. Once the moving party discharges its initial burden, a nonmoving party who bears the burden of proof must "go beyond the pleadings and by [its] own affidavits or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R.Civ.P. 56(e)). A non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

### III. Analysis

Defendants raise a number of arguments in their motions for summary judgment. The Court only addresses the arguments discussed below and finds it unnecessary to reach the other arguments made by Defendants.

### A. Claims Against Police Department

■ Defendants City of Coral Gables and City of Coral Gables Police Department argue that summary judgment should be granted on the claims asserted against the Coral Gables Police Department, arguing that it is not an entity subject to suit. This Court agrees. The Eleventh Circuit has stated that "[s]heriff's departments and police departments are not usually considered legal entities subject to suit." *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir.1992). The capacity to sue or be sued is " 'determined by the law of the state in which the district court is held.' " *Id.* (quoting Fed.R.Civ.P. 17(b)). Under Florida law, " 'where a police department is an integral part of the city government as the vehicle though which the city government fulfills its policing functions it is not an entity subject to suit.' " *Fla. City Police Dep't v. Corcoran*, 661 So.2d 409, 410 (Fla. 3d DCA 1995) (quoting *Eddy v. City of Miami*, 715 F.Supp. 1553, 1556 (S.D.Fla.1989)).

Michael Hammerschmidt, the current Chief of Police of the City of Coral Gables Police Department, states in his affidavit that

> The City of Coral Gables is a municipality organized and existing under the laws of the State of Florida. The City of Coral Gables provides services to its residents though various departments. Law enforcement services are provided through the Police Department. The City of Coral Gables Police Department is not a legal entity and does not have any legal existence separate and apart from the City of Coral Gables itself. The City of Coral Gables Police Department is the vehicle through which the City of Coral Gables fulfills its policing functions.

(D.E. No. 61, Exh. E at ¶ 3). Plaintiff has offered no evidence to dispute these statements.[2] Therefore, as there are no genu-

---

2. Plaintiff responded to this argument stating:

> The Coral Gables Police Department has also, again, argued that it is not an entity

ine issues of material fact on this issue, summary judgment is granted on the claims asserted against the City of Coral Gables Police Department.

### B. Section 1983 Claims Against All Defendants

■ All Defendants argue that summary judgment should be granted on Plaintiff's section 1983 claims in Counts I, II, III, and IV. Section 1983 creates a private right of action where a person or entity acts under color of law to deprive a plaintiff of his or her federally protected rights. 42 U.S.C. § 1983. Thus, in order to state a violation of section 1983, a plaintiff must allege a violation of a federally protected right. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). In this case, Ball has alleged a violation of his rights under the Fourth and Fourteenth Amendments based on his out-of-jurisdiction arrest by Officers Garcia and Smith.

Defendants argue that the arrest was not unlawful as the Coral Gables police officers had the authority to make the arrest pursuant to a mutual aid agreement between Coral Gables and South Miami. Plaintiff argues that the Court should not consider this agreement because it is too broad and invalid as a matter of law, because the agreement is a fabrication, and because Defendants are precluded from

relying on it based either on the doctrine of collateral estoppel or res judicata. The Court finds that Plaintiff's arguments are without merit and that the agreement gave the officers the authority to stop and arrest Plaintiff.

Generally, a police officer's authority is limited to his or her jurisdiction. *See* Fla. Stat. 30.15; *State v. Gelin*, 844 So.2d 659, 661 (Fla. 3d DCA 2003) (stating that "[g]enerally, an officer does not have any official power to make an arrest outside the officer's jurisdiction."). However, there are certain exceptions to this general prohibition including situations where an officer is operating under a mutual aid agreement enacted pursuant to the Florida Mutual Aid Act. *See* Fla. Stat. §§ 23.12, *et. seq. See e.g., Rinaldo v. State*, 787 So.2d 208, 214 (Fla. 4th DCA 2001) (affirming a trial court's determination that an officer could arrest outside of his jurisdiction pursuant to a mutual aid agreement); *State v. Filoso*, 613 So.2d 69, 69–70 (Fla. 4th DCA 1993) (finding a defendant was properly arrested pursuant to a mutual aid agreement).

Defendants have submitted a "Voluntary Cooperation and Operational Assistance Mutual Aid Agreement" ("Mutual Aid Agreement") entered into between the Coral Gables Police Department and the City of South Miami Police Department pursuant to the Florida Mutual Aid Act.[3]

---

subject to suit. However, this same argument was raised in its Motion to Dismiss and this Court ruled against it on this issue. Therefore, Mr. Ball will stand by his previous arguments with respect to this issue as well as this Court's prior ruling. (D.E. No. 70 at 3 n. 2).

The Court agrees that this was the same argument made in the Defendants' motion to dismiss. However, the Court very clearly stated in its Order on the motion to dismiss that it was denying dismissal of the claims against the police department because "the Court cannot determine from the face of the

Complaint whether the police department is in fact an integral part of the city government." (D.E. No. 39 at 4–5). Moreover, the Court even stated that it found "it unlikely that … [the] claims [against the police department] will survive summary judgment." *Id.* at 5. Thus, the Court finds it incredible that Plaintiff's only response to this argument for summary judgment has been to state that he stands by the Court's prior ruling.

**3.** Defendants have also provided evidence that this Mutual Aid Agreement was in effect at the time of Plaintiff's arrest. *See* (D.E. No. 61, Exh. E at ¶ 4).

*See* (D.E. No. 61, Exh. E, Exh. A). The Mutual Aid Agreement provides for

> Joint enforcement of all state laws and county ordinances, and exercise of arrest powers 24 hours per day all year, within the area along the centerline of S.W. 57th Avenue (Red Road) from S.W. 40th Street (Bird Road) on the north, to S.W. 72nd Street (Sunset) on the south, 100 feet from the center line of the roadway, inclusive of all areas within this description.

*Id.* at 2. The Mutual Aid Agreement also provides:

> [t]hat each jurisdiction extends to the other the right to conduct traffic enforcement activities on the following roadways: ... [a]long 57th Avenue, within the area along the centerline of S.W. 57th Avenue (Red Road) from S.W. 40th Street (Bird Road on the north, to S.W. 72nd Street (Sunset) on the south, 100 feet from the center line of the roadway, inclusive of all areas within this description.

*Id.* at 2–3. It is undisputed that both the traffic stop and arrest of Plaintiff occurred within the area described above in the agreement.[4]

Plaintiff argues that this Mutual Aid Agreement allows another police department to routinely patrol another police department's jurisdiction and is invalid as a matter of law as "it ... exceed[s] the authority of the enabling statute." However, Plaintiff misinterprets the Mutual Aid Agreement. The Mutual Aid Agreement at issue does not give the two police departments the right to routinely patrol each other's jurisdiction. In conjunction with the requirement in the Mutual Aid Act that any agreement "specify the nature of the law enforcement assistance to be rendered," the agreement at issue discretely limits the police departments to certain instances where they can receive and extend mutual aid. *See* Fla. Stat. § 23.1225(1)(a); (D.E. No. 61, Exh. E, Exh. A at 2–3). Specific to this case, the police departments are limited to the right to arrest and conduct traffic enforcement activities along a stretch of road on the dividing line between the two municipalities. (D.E. No. 61, Exh. E, Exh. A at 2–3).

One of the purposes of the Mutual Aid Act is to allow for police departments to provide for the "protect[ion] of the public peace and safety" when dealing with "major law enforcement problems ... that cross jurisdictional lines." Fla. Stat. § 23.121(1). *See also State v. Allen,* 790 So.2d 1122, 1125–26 (Fla. 2d DCA 2001) (stating that "the legislative intent [of the Mutual Aid Act] was to assure the continued functioning of law enforcement in times of emergencies or in areas where major law enforcement efforts were being thwarted by jurisdictional barriers."). The Mutual Aid Act also defines a mutual aid agreement as "a voluntary cooperation written agreement between two or more law enforcement agencies, which agreement permits voluntary cooperation and

---

**4.** The officers' Incident/Investigation Report specifically provides that the incident occurred at the intersection of Red Road and SW 56th Terrace. *See* (D.E. No. 61, Exh. B). This is clearly within the specific area identified in the Mutual Aid Agreement. Arguably, the Mutual Aid Agreement would not even be necessary to give Officer Garcia the authority to arrest Ball. Officer Garcia states he observed Ball weaving in and out of the southbound lane. The Court takes judicial notice that in this area Red Road only has one southbound lane and one northbound lane. Thus, assuming Ball was weaving into the other lane and not off the road, it appears that Ball was at least partially in the City of Coral Gables at least some of the time that Officer Garcia observed him. *See* (D.E. No. 61, Exh. A at 2). This is precisely the type of situation this Mutual Aid Agreement contemplates.

assistance of a routine law enforcement nature across jurisdictional lines." Fla. Stat. § 23.1225(1)(a). Here, this Mutual Aid Agreement between Coral Gables and South Miami meets this definition and fulfills the purpose behind the Act. Thus, the Court finds Plaintiff's argument that the Mutual Aid Agreement is invalid as a matter of law is without merit.[5]

Plaintiff next argues that Defendants are precluded from relying on the Mutual Aid Agreement because it is a fabrication. In his responses to the motion for summary judgment, Plaintiff does not explain his reasons for his conclusory statement that the Mutual Aid Agreement is a fabrication. Instead, Plaintiff states that he intends to file a motion to strike the agree-

ment. Over two weeks after his responses were due and filed, he did in fact file his motion to strike.[6] In this motion, Plaintiff argues that the Mutual Aid Agreement is a fabrication because it is "different from the ... Mutual Aid Agreement document used in the underlying criminal case." (D.E. No. 77 at 1).

Plaintiff refers to the criminal case brought against him in the state county trial court. In this case, Ball was found not guilty of failing to maintain a single lane but guilty of driving under the influence. Ball appealed his conviction and the appellate division of the Circuit Court of the Eleventh Judicial Circuit, in and for Miami–Dade County, Florida reversed

---

5. In a footnote in his responses, Plaintiff makes the argument that even if the officers had the authority to stop and arrest Mr. Ball, the officers' failure to strictly comply with the terms of the mutual aid agreement and turn Plaintiff over to the South Miami Police Department make the arrest invalid. This Court disagrees that the Mutual Aid Agreement required that Ball be turned over to the South Miami Police Department.

> In section III, the Mutual Aid Agreement in question provides that "[s]hould a sworn law enforcement officer be in another subscribed agency's jurisdiction for matters of a routine nature, such as traveling though the area on routine business, attending a meeting or going to or from work, and a violation of Florida statutes occurs in the presence of said party ... he/she shall be empowered to render enforcement assistance and act in accordance with law. Should enforcement action be taken, said party shall notify the agency having normal jurisdiction and upon the latter's arrival, turn the situation over to them and offer any assistance requested *including* but not limited to a follow-up written report documenting the event and the actions taken. (D.E. No. 60, Exh. A at 4). This language applies to the more general situation where an officer happens to be out of his jurisdiction and observes a violation. However, in section II of the Mutual Aid Agreement, officers are specifically given joint enforcement pow-

ers, including the ability to arrest and to conduct traffic enforcement activities in the area on Red Road from Bird to Sunset. There is no requirement in this section that the situation be turned over to the other jurisdiction.

Even if this requirement applied to the situation at issue in this case, this Court disagrees that such a procedural failure could rise to the level of a constitutional violation. This is especially true as this failure to turn over Ball to the other jurisdiction occurred after Ball was already validly arrested by officers that were given the power to make such an arrest. *See Pasiewicz v. Lake County Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir.2001) (reversing the district court's entry of summary judgment in favor of a plaintiff bringing a claim under section 1983, finding there was no Fourth Amendment violation even though the officers acted outside of their jurisdiction but noting that "[t]he present case might arguably be viewed different if ... [the officers] knew they lacked jurisdiction and the ... police department, where the arrest occurred, specifically prohibited the two officers from arresting Pasiewicz within their jurisdiction.").

6. Plaintiff has improperly used his motion to strike and his late-filed reply brief to his motion to strike to further address other arguments in opposition to Defendants' motions for summary judgment. Despite this, the Court has fully considered both the motion to strike and the late-filed reply.

Ball's conviction, finding that the mutual aid agreement did not give the officers the authority to stop and arrest Ball as this agreement specifically prohibited officers from conducting routine patrol activities outside of their jurisdiction. *See* (D.E. No. 70–3, *Ball v. State,* 04–092 AP, Opinion dated June 4, 2006). However, the state court, after the mandate had issued, corrected this opinion, recognizing that their original opinion referred to the wrong mutual aid agreement. *See* (CD of state court records in court file, *Ball v. State,* 04–092 AP Revised Corrected Opinion dated November 21, 2006).[7] Specifically, the first opinion referred to a mutual aid agreement between Miami–Dade County and the City of Coral Gables rather than an agreement between South Miami and Coral Gables. *Id.* However, this mutual aid agreement referred to by the state court in its revised and corrected opinion is different from the one which Defendants have relied on in this case.

The parties agree that the mutual aid agreement upon which the state court relied in its revised and corrected opinion is the Combined Voluntary Cooperation and Operational Assistance Law Enforcement Mutual Aid Agreement. *See* (D.E. No. 77–3). This agreement is similar to the mutual aid agreement submitted by Defendants in this case; however, the Mutual Aid Agreement submitted by Defendants, in relevant part, contains the specific provisions relating to the area of Red Road that serves as a dividing line between the two municipalities. *See* (D.E. No. 61, Exh. E., Exh. A). Plaintiff contends that because the agreements are different, this "new" agreement must be a fabrication.

However, Defendants have provided an affidavit from Michael Hammerschmidt, the current Chief of Police for the City of Coral Gables Police Department, in which he states he has reviewed both mutual aid agreements and that both were in effect at the time of this incident. He explains that the agreement upon which the state court relied is "the general Mutual Aid Agreement which does not specifically address traffic enforcement between the two cities" while the Mutual Aid Agreement submitted by Defendants in this case was prepared "to govern traffic enforcement between the City of Coral Gables and the City of South Miami." (D.E. No. 81, Exh. A at ¶¶ 3–4).[8] Plaintiff has offered no evidence to dispute these statements and more importantly, Plaintiff has provided absolutely no support for his conclusory allegation that the Mutual Aid Agreement was somehow fabricated. Thus, the Court denies Plaintiff's motion to strike and finds this argument does not defeat summary judgment. *See Evers v. General Motors Corp.,* 770 F.2d 984, 986 (11th Cir.1985) (stating that "[t]his court has consistently held that conclusory allegations without specific supporting facts have no probative value.").

■■■ Finally, Plaintiff argues that Defendants are precluded from relying on this Mutual Aid Agreement based on the doctrines of collateral estoppel and/or res judicata. Specifically, Plaintiff attempts to apply these doctrines offensively, arguing that the issue of whether or not the arrest was unlawful was already litigated in the state court criminal case and Defendants

---

7. Neither party provided the Court with the most recent revised opinion of the state court. Thus, the Court required Defendants to provide a CD of the record from the state appellate court. This opinion is on this CD which has been placed in the Court file.

8. As discussed below, neither the City of Coral Gables nor the individual officers were parties to the state court action.

are barred from reasserting it here.[9] Collateral estoppel and res judicata are judicial doctrines which in general terms prevent the same parties from relitigating issues decided in a previous action. *See Essenson v. Polo Club Associates*, 688 So.2d 981, 983 (Fla. 2d DCA 1997).[10] "In order for res judicata or collateral estoppel ... to apply, Florida requires 'mutuality' and 'identity of parties.'" *Massey v. David*, 831 So.2d 226, 232 (Fla. 1st DCA 2002). "Identity of parties and mutuality do not exist unless the same parties or their privies participated in prior litigation that eventuated in a judgment by which they are mutually bound." *Id.* For purposes of res judicata or collateral estoppel, a party is in privity· with a party to a lawsuit where he or she "is bound by the final judgment entered to the same extent as the named parties." *Id.* Plaintiff has not shown that this case and the state court criminal case involve the same parties or their privies.

The state court criminal case involved Ball and the State of Florida. Neither the City of Coral Gables nor the individual officers were parties to this criminal action, nor were they in privity with the State of Florida.[11] Ball argues that the City of Coral Gables raised these arguments relating to the Mutual Aid Agreement in an amicus curie Motion to Correct Opinion and Motion to Recall Mandate. However, the state court denied this motion and the City of Coral Gables was not permitted to appear amicus curie in the criminal action. *See* (CD of state court records in court file, *Ball v. State*, 04–092 AP Revised Corrected Opinion dated November 21, 2006). *See also* (D.E. No. 85, Exh. A). There is no evidence that Defendants had a full and fair opportunity to litigate this issue in the earlier case. Thus, the Court finds Plaintiff's argument that Defendants are somehow precluded from asserting that the arrest was valid under the Mutual Aid Agreement submitted to this Court is without merit. Therefore, the Court grants Defendants' motion for summary judgment on the section 1983 claims.

9. This Court applies Florida law when it determines whether the doctrines of collateral estoppel or res judicata apply with respect to this state court judgment. 28 U.S.C. § 1738. *See also Farred v. Hicks*, 915 F.2d 1530, 1533 (11th Cir.1990).

10. The difference between the two doctrines is that res judicata "bars a subsequent suit between the same parties based upon the same cause of action and is conclusive as to all matters germane thereto that were or could have been raised, while ... [collateral estoppel] is applicable where the two causes of action are different, in which case the judgment in the first suit only estops the parties from litigating in the second suit issues— that is to say points and questions-common to both causes of action and which were actually adjudicated in the prior litigation." *Deep Lagoon Boat Club, Ltd. v. Sheridan*, 784 So.2d 1140, 1143 n. 4 (Fla. 2d DCA 2001).

11. Ball also argues in his late-filed Reply brief in support of his motion to strike that "the State of Florida represents the interests of all of its citizens, including the Defendants, and all of its citizens are bound by the legal proceedings instituted by the State of Florida." (D.E. No. 91 at 4). Ball then notes in a footnote that "[t]his is such a well-known principle of law that citation to authority is unnecessary." *Id.* at 4 n. 1. The Court disagrees.

Under Ball's interesting interpretation of privity, all Florida citizens would be in privity with the state pursuant to the doctrines of collateral estoppel and res judicata anytime the State of Florida is involved in a suit. This is not the law. *See, e.g., Gentile v. Bauder*, 718 So.2d 781, 783 (Fla.1998) (finding a defendant officer was not collaterally estopped from raising a qualified immunity defense based on a criminal case where a motion to suppress was granted because the officer was not a party to the criminal action and was not in privity with the State of Florida). Such an interpretation of the law would violate due process.

## C. Tort Claims Against All Defendants

■ Defendants also seek summary judgment on the state law tort claims asserted against them in Counts V and VI. In Count V, Plaintiff has asserted a claim for false arrest/ false imprisonment and in Count VI, Plaintiff has asserted a claim for malicious prosecution. Defendants argue that these claims fail because there is no genuine issue of material fact that probable cause existed to arrest Plaintiff and that probable cause existed to prosecute Plaintiff. The Court agrees.[12]

■ On a malicious prosecution claim, it is the plaintiff's burden to demonstrate a want of probable cause for the prosecution, whereas on a false arrest claim, probable cause is an affirmative defense which must be proven by the defendant. *Willingham v. City of Orlando*, 929 So.2d 43, 48–9 (Fla. 5th DCA 2006). "In order for probable cause to exist, 'an arrest [must] be objectively reasonable under the totality of the circumstances.'" *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir.1998) (quoting *Bailey v. Bd. of County Comm'rs of Alachua County*, 956 F.2d 1112, 1119 (11th Cir.1992)).[13]

This standard is met when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." "Probable cause requires more than mere suspicion, but does not require convincing proof." In determining whether probable cause exists, "'we deal with probabilities ... [which] are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'"

*Rankin*, 133 F.3d at 1435 (citations omitted). Defendants have met this standard.

Defendants have provided the affidavit of Officer Garcia in which he states that on the night in question he "observed a white four-door 1992 Jeep Cherokee driven by Plaintiff, Patrick K. Ball, repeatedly swerving in and out of its lane of travel." (D.E. No. 61, Exh. A at 2). He states that he suspected "the driver was under the influence of alcohol" so he pulled him over. *Id.* Officer Garcia got out of his car and "[u]pon approaching the driver's side win-

---

**12.** Plaintiff's claims as pled are not that the officers lacked probable cause to arrest him or to initiate criminal proceedings against him. Instead, as the Court explained in its Order Granting in Part and Denying in Part Defendants' Motions to Dismiss, Plaintiff's claim is that an out-of-jurisdiction arrest automatically translates into a lack of probable cause. *See* (D.E. No. 39 at 9–10 n. 7). Thus, the out-of-jurisdiction arrest also forms the basis for Plaintiff's state tort claims for false arrest/false imprisonment and malicious prosecution. Consequently, as discussed above, the Mutual Aid Agreement would also entitle Plaintiff to summary judgment on his state tort claims.

One element of a false arrest/false imprisonment claim, is that the arrest must be proven to have been unreasonable and unwarranted under the circumstances. This Mutual Aid Agreement specifically negates Plaintiff's basis for arguing that the arrest was unreasonable and unwarranted. Malicious prosecution requires a plaintiff to demonstrate a want of probable cause and here, as stated above, Plaintiff equates the fact that the officers were outside of their jurisdiction with a lack of probable cause. While the Mutual Aid Agreement also specifically negates this argument, Plaintiff's conception of probable cause is not based in law. However, because the absence of probable cause is an element of malicious prosecution, the Court discusses probable cause. It discusses it as to both state tort claims in an abundance of caution.

**13.** The law applied to determine probable cause is the same under Florida and federal law. *Rankin*, 133 F.3d at 1435.

dow of the vehicle, ... [he states that he] immediately detected a strong odor of alcohol emanating from the vehicle's interior." *Id.* Plaintiff then informed Officer Garcia that he had been drinking alcohol at a friend's house. *Id.* at 3. Plaintiff exited the vehicle and Officer Garcia noticed that he was "unsteady in his balance and movements as he exited the vehicle and leaned against his vehicle for support." *Id.* Officer Garcia observed that "Plaintiff dropped his keys exhibiting ... diminished motor skills and coordination." *Id.* He also noted that Plaintiff "slurred his speech while answering questions and his eyes appeared watery and bloodshot." *Id.*

Officer Garcia then administered the Horizontal Gaze Nystagmus Test, which requires the subject to follow the side-to-side movement of a pen with his eyes. *Id.* Officer Garcia states that "Plaintiff was unable to follow the pen with his eyes and, upon realizing his inability to follow the pen, refused to continue the test." *Id.* Officer Garcia next administered the Heel-to-Toe test where the subject is asked to walk a straight line by placing one foot immediately in front of the other. *Id.* Officer Garcia found that "Plaintiff was unable to continue in a straight line and fell to his left." *Id.* Plaintiff then refused to take part in any further tests. *Id.*

At this point, Officer Garcia concluded that he had probable cause to arrest Plaintiff because of his "erratic driving in swerving in and out of his lane of travel; [his] noticeably diminished motor skills, coordination, and balance; [his] slurred speech; [his] watery and bloodshot eyes; [his] failure to successfully complete road side sobriety tests; [the] strong odor of alcohol; and [his] admission to having been drinking immediately prior to driving." *Id.* Officer Garcia then issued Plaintiff a citation for failing to maintain a

single lane and arrested him for driving under the influence of alcohol. *Id.* at 4.

Plaintiff has not presented any evidence to dispute this evidence offered by Defendants. Plaintiff simply argues that no probable cause existed because the state court found him not guilty of failure to maintain a single lane, that no "probable cause" existed to stop him because even if Officer Garcia observed him swerving in and out of the lane several times, this conduct does not violate the statutory prohibition against failing to maintain a single lane. These arguments are completely without merit.

 First, the fact that the state trial court found Ball not guilty of failing to maintain a single lane is not determinative on the issue of probable cause. When considering probable cause as a defense to false arrest, the determinative factor is whether the officer, at the time of the arrest, had knowledge of sufficient facts to cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. *See City of Jacksonville v. Walton,* 318 So.2d 546, 547 (Fla. 1st DCA 1975). *See also LeGrand v. Dean,* 564 So.2d 510 (Fla. 5th DCA 1990) (where Plaintiffs were acquitted on charges of sexual battery and brought a false arrest claim against the Sheriff and the Court affirmed the trial court's entry of summary judgment based on defense of probable cause). "[T]he determinative factor as to the existence of probable cause as an element of a malicious prosecution action is whether the suit was brought without reasonable prospect of success. Acquittal or dismissal of the charges ... does not by itself establish improbability of the suit." *Phelan v. City of Coral Gables,* 415 So.2d 1292, 1294 (Fla. 3d DCA 1982). Based upon the evidence presented by Defendants, it is clear that a prudent person

would have believed that Plaintiff was driving under the influence, the offense for which he was arrested.

Next, Plaintiff argues that Officer Garcia's observations of his conduct were not sufficient to create "probable cause" for Officer Garcia to perform an investigatory stop of his vehicle. First, the correct standard in determining whether an officer could perform an investigatory stop is reasonable suspicion, which is a less demanding standard than probable cause. *See In re Forfeiture $28,176.00 U.S. Currency*, 946 So.2d 1133, 1135 (Fla. 3d DCA 2006). In order to detain an individual pursuant to an investigatory stop an officer "must have a well-founded suspicion that the individual committed, is committing, or is about to commit a violation of the criminal laws of this state or the criminal ordinances of any municipality or county." *Alvarez v. City of Hialeah*, 900 So.2d 761, 767 (Fla. 3d DCA 2005). The court must consider the "totality of the circumstances, as viewed by an experienced officer" when determining whether the officer had a well-founded suspicion. *Id.*

Here, Officer Garcia has stated that after midnight on the night in question, he observed the vehicle driven by Plaintiff Ball "repeatedly swerving in and out of its lane of travel." (D.E. No. 61, Exh. A at 2). He characterized Plaintiff's driving as "erratic." *Id.* He also stated that he suspected Plaintiff "was under the influence of alcohol and out of concern for the safety of other drivers and area residents" he stopped Plaintiff's vehicle. *Id.* Officer Garcia's observations on the night in question, which are not disputed by Plaintiff are sufficient to provide an officer with reasonable suspicion to stop a vehicle. Even if Plaintiff's driving on the night in question did not rise to the level of a violation of section 316.089, Florida Statutes, for failure to maintain a lane, Officer

Garcia had sufficient grounds to conduct a stop of Plaintiff's vehicle to determine if Plaintiff was impaired. *See State Dep't of Highway Safety and Motor Vehicles v. DeShong*, 603 So.2d 1349, 1352 (Fla. 2d DCA 1992) (noting that "[t]he courts of this state have recognized that a legitimate concern for the safety of the motoring public can warrant a brief investigatory stop to determine whether a driver is ill, tired, or driving under the influence in situations less suspicious than that required for other types of criminal behavior."); *Roberts v. State*, 732 So.2d 1127, 1128 (Fla. 4th DCA 1999) (finding that officer's observation of driver's weaving within her own lane "presented an objective basis for suspecting that she was under the influence" even where the driver committed no separate traffic offense); *State v. Carrillo*, 506 So.2d 495 (Fla. 5th DCA 1987) (same). Therefore, it is hereby:

**ORDERED and ADJUDGED** that

1. Defendants City of Coral Gables' and the City of Coral Gables Police Department's Motion for Summary Judgment (D.E. No. 61) and Defendants', Edward Garcia and Daniel Smith, Motion for Summary Judgment (D.E. No. 63) are **GRANTED.** To the extent that Plaintiff's responses to the motions for summary judgment are partial motions for summary judgment, they are **DENIED.** A final judgment will be entered separately by the Court.

2. Plaintiff's Motion to Strike Pleadings and for Default Judgment Against Defendants for Falsifying Documents (D.E. No. 77) is **DENIED.**

3. This Case is **CLOSED** and all pending motions are **DENIED** as **MOOT.**